DE FORTH vs. THE WISCONSIN & MINNESOTA RAILROAD COMPANY, imp.

*April 22 — May 10, 1881.*

DEFINITION. *(1) "Business" under Sunday laws.*
INJUNCTION: *(2) Against issue of municipal bonds to railroad: Estoppel of complainant.*
PLEADING. *(3) What facts need not be negatived in complaint.*

1. Where a town board of supervisors is authorized by law to issue bonds in aid of a railroad only upon the presentation of a petition therefor signed by a certain number of tax-payers of the town, the procuring and affixing of such signatures on Sunday is "business," and is unlawful, and confers no authority upon the supervisors to issue such bonds.

2. The fact that plaintiff affixed his signature on Sunday will not prevent him from obtaining an injunction against the issue of the bonds on the ground that the required number of signatures were not affixed on any secular day, where he did not on any secular day authorize the presentation of such petition to the supervisors, and where nothing had been done by the railroad company to earn the bonds before it was notified that plaintiff would resist their issue and denied the validity of such signature.

3. The complaint for an injunction in such a case need not aver that the persons who signed the petition on Sunday were *not* of the class described in sec. 4596, R. S., as persons "who conscientiously believe that the seventh day or any other day of the week ought to be observed as the Sabbath," etc.

De Forth vs. The Wisconsin & Minnesota Railroad Co., imp.

APPEAL from the Circuit Court for *Clark* County.

The case is thus stated by Mr. Justice TAYLOR:

" This action was brought to restrain the board of supervisors of the town of Thorp from issuing, and the defendant railroad company from demanding or receiving from said town board, $5,000 of the bonds of said town in exchange for the like amount of the capital stock of said company. The complaint sets out the fact that the town of Thorp is one of the duly organized towns in Clark county; and that the respondent is the owner of a large amount of real estate in said town, and a resident tax-payer thereof. It then sets out that the railroad company, being about to construct a railroad through the counties of Clark and Chippewa, and partly through said town, made application for aid from said town under the provisions of sections 942–6, R. S., and that such application was made in the manner prescribed by the first subdivision of section 946. It sets out all the facts, showing that the company had apparantly complied in all respects with the provisions of section 946 so as to entitle it to the $5,000 of the bonds of the town, and to authorize the proper officers of said town to issue said $5,000 of the bonds of said town in exchange for the like amount of the capital stock of such railroad company; and further alleges that the board of supervisors of said town threaten to issue said bonds and deliver them to the railroad company in exchange for such stock; that said company claims and insists that it is lawfully entitled to have and receive the said bonds from said town; that they will be issued by said board of supervisors and received by said railroad company unless restrained by the injunction of the court; and that, if they are so issued and received, the property of the plaintiff and of the other tax-payers of the town will be taxed to pay the same and the interest thereon. It alleges, as a reason for enjoining the issuing of said bonds, that the petition of the resident tax-payers of said town, required to be presented by the railroad company and filed with the clerk of the town, under the pro-

visions of section 946, was void, and insufficient to authorize the issuing of said bonds, because thirteen of the resident tax-payers whose names appear upon said petition, and without whose names, and all of them, such petition would not be signed by a majority of such resident tax-payers, as prescribed by said section, signed such petition on Sunday, and most of them on Sunday the 11th day of July, 1880, and not at any other time; and that such petition was delivered by said railroad company to the clerk of said town, so signed, on the 12th day of July, 1880.

"Neither the board of supervisors nor the town clerk, who were made defendants with the railroad company, appeared in the action. The railroad company appeared, and filed a demurrer to the complaint, alleging, as the ground of demurrer, that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was overruled, and the court ordered judgment in favor of the plaintiff, perpetually enjoining the issuing of said bonds. The defendant company filed exceptions, and appealed from the judgment."

*Edwin H. Abbot* and *S. U. Pinney*, for the appellant, argued, among other things, that the contract between the town and company was not completed until the proposition had been accepted by the town. The statute provides that when the company delivers to the town clerk certain papers, then the proposition shall be deemed accepted. R. S., sec. 946. The complaint alleges that the delivery took place on Monday, July 12, 1880, in exact conformity to the provisions of the statute. Nothing was done between the contracting parties on Sunday. The contract took effect on a secular day. The signatures were *prima facie* regular, and the time when they were actually affixed to the petition is immaterial to the validity of that contract. The signatures made on Sunday were not void. They simply afford no aid to either party who is obliged to show affirmatively, as part .of his case, the time when they were written. *Smith v. Bean*, 15 N. H., 577;

*Troewert v. Decker*, 51 Wis., 46. The plaintiff in this case, in attacking the contract, is obliged to set up his own illegal act in his own behalf. This he cannot do. *Myers v. Meinrath*, 101 Mass., 366; *Woodman v. Hubbard*, 25 N. H., 67; *Morton v. Gloster*, 46 Me., 520; *Hall v. Corcoran*, 107 Mass., 251; *Sutton v. Wauwatosa*, 29 Wis., 21; *Schmid v. Humphrey*, 48 Iowa, 652; *Holt v. Green*, 73 Pa. St., 198. But, on the other hand, legal rights may arise out of acts done in violation of the Sunday laws, although those acts cannot be used as affirmative proof to establish such rights. The fact, therefore, of these signatures being made on Sunday does not impair the validity of the petition nor diminish its legal effect when delivered to the clerk. Goods were landed and stored on Sunday in the railroad warehouse, and then burnt. The warehouseman was held liable for their loss. *Powhatan Steamboat Co. v. Appommattox R. R. Co.*, 24 How., 247. A note actually signed on Sunday but delivered on a secular day is valid. *Lovejoy v. Whipple*, 18 Vt., 379; *Goss v. Whitney*, 24 id., 187; *S. C.*, 27 id., 272; *Hilton v. Houghton*, 35 Me., 143; *Bank of Cumberland v. Mayberry*, 48 id., 198. And a note made and delivered on Sunday, but indorsed before maturity to a *bona fide* holder without notice of the defect, cannot be impeached in his hands. *State Capital Bank v. Thompson*, 42 N. H., 369; *Bank of Cumberland v. Mayberry*, 48 Me., 198; *Allen v. Deming*, 14 N. H., 133. Notice of rescission of a contract was lawfully given on Sunday, and did not come within the Nevada statute. *Pence v. Langdon*, 99 U. S., 578, 580. A deed made on Sunday cannot be avoided by a stranger to the transaction, who claims under a subsequent levy. *Greene v. Godfrey*, 44 Me., 25; *Richardson v. Kimball*, 28 id., 463. And a contract fully executed on that day, which passes title to property, is a valid sale. *Ellis v. Higgins*, 32 Me., 34; *Merritt v. Earle*, 31 Barb., 38. A court of equity has never interposed by injunction in favor of a complainant who, as in this case, seeks its aid, for him-

self alone, on the single ground that he and his associates broke the law. And it will not do so, especially against a defendant whose only fault was that he executed on Monday the contract which the plaintiff had on Sunday expressly requested not the defendant but the other party to that contract to execute. The doctrine that no man shall take advantage of his own wrong, is as firmly established in equity as in courts of law. *Hawkins v. Hall*, 4 Myl. & Cr., 281. In this case, too, the unlawful act, if any, was done by a third party, who is not even one of the contracting parties. It has been thus far assumed, *arguendo*, that the signing on Sunday was a violation of the statute; but this may well be doubted. Many acts which are neither charitable nor necessary may be done by individuals in their own matters on Sunday, without breaking the law. Thus, a will executed on Sunday is valid (*Bennett v. Brooks*, 9 Allen, 118); and marriage, which is a purely civil contract under our law, is valid. *Gangwere's Estate*, 14 Pa. St., 417. The transaction here impeached does not fall within the ordinary description of forbidden action. It is not, in any aspect, the making of a contract. It is, in fact, a mode of voting that the town be authorized to contract. Signing the petition does not differ in its nature from casting of a ballot. It is not "labor, business or work," unless the exercise of a public function comes within the sense of the phrase. The words "labor, business or work of their ordinary callings" are the phrase in the English statute (27 Car. II, c. 7, § 1), from which our Sunday laws are borrowed. The Massachusetts statute omits the last four words, and, like the Wisconsin statute, prohibits broadly, "labor, business or work." But in Massachusetts it is held "that the legislature did not intend to carry the prohibition further than to restrain the exercise of all those occupations and employments which make up the common and daily business of mankind, and such dealings and bargains as properly and usually appertain thereto." *Bennett v. Brooks*, 9 Allen, 118. The exercise of an electoral

franchise is not within the prohibition. What is prohibited to the individual is the doing, for mere self-interest and profit, those not necessary acts which directly make for his own advantage. Such actions as concern the public weal, or the private unremunerated benefit of his fellows, are taken out of the statute. And governmental acts of all sorts have never, apparently, been construed to be within Sunday laws. Such acts, so far as they are prohibited on that day, are forbidden by special enactment, not by this statute, which only applies to and disqualifies private, not official, actors. See R. S., secs. 4595, 2576. If it be admitted by the respondent that the contract was wholly made on a secular day, but argued that the town had no authority to make such contract unless a " petition bearing the signatures," etc., should be filed; that the language of the statute must be construed to mean legal signatures; and that no signature on Sunday could be legal, — it is replied: 1. The respondent, at any rate, cannot set up this defect of authority. He is, substantially, estopped to plead it, for he created the defect. *Knox v. Clifford*, 38 Wis., 651, 657. 2. If the illegality is in the making of the signatures on that day, and the transaction was finished when they were written, then the law declines to interfere in an executed transaction, and leaves the parties where they have placed themselves. The respondent cannot set up the defect in his signature; and the record, being *prima facie* regular, is sufficient because unimpeached. *Myers v. Meinrath*, 101 Mass., 366; *Smith v. Bean*, 15 N. H., 577; *Troewert v. Decker*, 51 Wis., 46. 3. If, however, the getting of signatures to the petition is merely a part of the process of effecting the contract between the town and the company, then the contract is valid, because the petition was not filed, and the contract was not completed, until the filing on Monday. *Merrill v. Downs*, 41 N. H., 72; *Smith v. Foster*, id., 222; *Adams v. Gay*, 19 Vt., 369; *Sumner v. Jones*, 24 id., 317; *Harris v. Morse*, 49 Me., 432; *Hilton v. Houghton*, 35 id., 143; *Commonwealth*

*v. Kendig*, 2 Pa. St., 451; *Bailey v. Blanchard*, 62 Me., 168; *King v. Fleming*, 72 Ill., 21; *Tuckerman v. Hinkley*, 9 Allen, 452; *Stackpole v. Symonds*, 23 N. H., 229; *Dickinson v. Richmond*, 97 Mass., 45; *True v. Plumley*, 36 Me., 466; *Hoghtaling v. Osborn*, 15 Johns., 119; *Reid v. State*, 53 Ala., 402; *Huidekoper v. Cotton*, 3 Watts, 56; *State v. Ricketts*, 74 N. C., 187; *Baxter v. People*, 2 Gilm., 578; *Webber v. Merrill*, 34 N. H., 202; *Butler v. Kelsey*, 15 Johns., 177; *Melchoir v. McCarty*, 31 Wis., 256. The complaint does not allege, and consequently the demurrer does not admit, that the Sunday signers were not conscientious believers in the observance of some other day than Sunday; and therefore it does not appear that they could not lawfully perform secular labor and business on the first day of the week. In the absence of such averment, their signatures cannot be presumed to have been made in violation of sec. 4595, R. S., but must be presumed to be valid under sec. 4596. See *Dickinson v. Richmond*, 97 Mass., 45; *Tuckerman v. Hinkley*, 9 Allen, 452; *Sanders v. Johnson*, 29 Ga., 526.

*R. J. MacBride* and *James O'Neill*, for the respondent:

The contract was effected by a series of transactions, all of which are essential to its validity; and if the company be shown to have proceeded illegally in any one of the steps to be taken, the whole contract fails. One of the necessary steps to render the proceedings to bond the town valid, is a valid petition bearing the lawful signatures of a majority of the resident tax-payers of the town. Without this, there is no authority to contract. A petition signed on Sunday is void. The signing is "business" within the meaning of the statute, and is not a "work of necessity or charity." See *Troewert v. Decker*, 51 Wis., 46; *Fivaz v. Nicholls*, 2 M., G. & S., 500; *Holt v. Green*, 73 Pa. St., 198; *Tillock v. Webb*, 56 Me., 100; *Melchoir v. McCarty*, 31 Wis., 256; *Gregg v. Wyman*, 4 Cush., 326; *Hall v. Corcoran*, 107 Mass., 251; *Merriam v. Stearns*, 10 Cush., 257. It cannot be claimed that the respondent is

not entitled to relief because, he himself signed the petition on Sunday. It is not stated in the complaint that the Peter De Forth who signed the petition and the plaintiff are the same person. And it is not necessary for the respondent to show any unlawful act of his in order to show the illegality of the proceedings to bond the town. Only six of the nineteen signatures of resident tax-payers were affixed on a secular day; so that the name of De Forth may be disregarded and the illegality of the proceedings will appear. *Hall v. Corcoran, Melchoir v. McCarty, supra.* Conceding that the respondent did sign the petition on Sunday, he is not estopped from maintaining this action. *Congress & Empire Spring Co. v. Knowlton* (U. S. Sup. Ct., Jan. 31, 1881), 23 Alb. L. J., 290. See also *Winfield v. Dodge*, 7 N. W. Rep., 906; *Parker v. Latner*, 60 Me., 528; *Allen v. Duffy*, 4 N. W. Rep., 429; *Durant v. Phenier*, id., 610. If the thirteen persons who signed on Sunday observed the seventh day as the Sabbath, this would be matter of defense to be pleaded and proved by the defendant. It would be no more necessary to allege that such signers did not observe the seventh day, than to allege that the plaintiff is twenty-one years of age. *Sayer v. Wheeler*, 31 Iowa, 112.

Counsel upon both sides also discussed at some length the question of the constitutional validity of the method of authorizing municipal subscriptions prescribed by sec. 946, R. S.

TAYLOR, J. The allegations of the complaint show that it was necessary to have nineteen signatures of resident tax-payers of the town to the petition in order to justify the issuing of the bonds, and that only six of these signatures were made on any secular day; all the others were made on Sunday. The real and material question in this case is, whether a petition signed by the resident tax-payers on Sunday is a lawful petition, under the provisions of section 946, and would justify the issuing of the bonds of the town under said section. Sec-

tion 4595, R. S., makes it unlawful "to do any manner of labor, business or work, except only works of necessity and charity," on the first day of the week, or Sunday. It was held by this court in *Troewert v. Decker*, 51 Wis., 46, that the loaning of money and giving a note therefor was business, within the meaning of this statute; and it appears to us perfectly clear that going about and procuring the signatures to a petition of the tax-payers of a town, upon the presentation of which, properly signed, to the clerk of such town, the board of supervisors thereof would be authorized to execute and deliver to a railroad company the bonds of the town for a large sum of money, and pledge the credit thereof for the payment of the same and the interest thereon, is a very important business, so far as the railroad company and the town are concerned. We also think that when the tax-payer subscribes his name to such petition he is doing business within the meaning of such statute. He is doing that which, if lawfully done, would authorize the incurring of a large indebtedness on the part of the town, and the granting of a large pecuniary benefit to the railroad company soliciting such signatures. One of the definitions of the word "business," given by Webster, is a "transaction." The signing of the petition was a very important part of a very important transaction between the railroad company and the town — so important that unless the signatures were obtained there would be no authority for the board of supervisors to issue the bonds, and no right on the part of the company to demand their issue. Without it the board would be devoid of any power to bind the town for the payment of any bonds they might issue in its name in aid of the railroad company. The fact that there was a petition signed by the proper number of resident tax-payers, is made, by the provisions of section 946, the very foundation of the authority of the town officers to bind the town by issuing its bonds.

The defendant company having violated the law in procur-

ing the signature of the tax-payers to the petition, and the petitioners having also violated the law by signing the same on Sunday, it would seem to follow as a legal consequence that the company can derive no rights through or by virtue of such illegal action on its part.   But the learned counsel for the appellant argues with much earnestness and ability, that because the petition was presented on a secular day, signed with the names of a sufficient number of the tax-payers of the town, the town board not only had the power to act upon such petition without inquiry as to the time when the signatures were made, but that the company had the right to compel their action if they refused.   The argument seems to go the length of holding that if the proper number of genuine signatures are attached to the petition when presented to the clerk, neither the town board nor any one else can question the methods by which such signatures were obtained.   This, we think, is clearly a mistaken view of the question.   It seems very clear to us that the sufficiency of the petition might be impeached by showing that the signatures were obtained by force or fraud; and there does not appear to us any good reason why its validity cannot be impeached by showing that the signatures were obtained in violation of the Sunday law. If a man gives his note on Sunday as the consideration for goods sold or money loaned, he may show the fact as defense, in an action to recover upon such note.   He does not deny his promise or his signature; he admits that he has had the goods sold or the money loaned; and yet the law says the holder of the instrument cannot recover, because it was given in violation of the statute.   In both the giving and taking of the note the statute was violated; and because the person taking the note was equally guilty with the maker of the same, the courts will not aid him in enforcing his contract so made.   The contract in itself is not illegal, but because the making of it on Sunday was a violation of a criminal statute, it cannot be enforced.

Will a court of equity permit a party to make use of a petition which is in the nature of a request or power of attorney, authorizing the town authorities to issue to him the bonds of a town, which shall be a charge upon the property of the petitioners and all other tax-payers of the town, when it appears that such party obtained the signatures of the petitioners by an act which was a violation of the criminal laws of the state? If the appellant were proceeding against the officers of the town to compel the issuing of the bonds, there would not seem to be any doubt as to the right of the town authorities to set up the unlawful act of the appellant in procuring the signatures, as a defense to the action. The law having required the appellant to procure the signatures of the tax-payers to the petition before it is authorized to call upon the authorities to issue the bonds, the petition is the very foundation of the appellant's right; and when it is shown that the appellant violated the law in procuring the signatures, he is not in a position to ask the aid of a court to enforce a claim against the town founded upon such petition. In such case, the right depending upon the validity of the petition, it is no answer that in the first instance the appellant could make out a case without showing that it had violated any law. In such action the appellant's right to relief would rest upon the petition, and it being shown that the petition was obtained by an act which violates the criminal laws of the state, the court cannot grant the relief any more than in favor of the payee of a note made on Sunday. The payee, in his action, can make out his case without showing any violation of the law. He introduces his note, and he has made a case. The note may or may not show on its face that it was made on Sunday, and even though the date might show that fact, yet in favor of the legality of the contract the court, in the absence of other proofs, would probably presume that, notwithstanding the date, it was in fact delivered on a secular day. The proof of the illegal act of the

De Forth vs. The Wisconsin & Minnesota Railroad Co., imp.

payee comes from the defendant; but when made it shows that he cannot recover except by virtue of the contract which was made in violation of law, and his case fails.

This question was discussed and disposed of in the case of *Myers v. Meinrath*, 101 Mass., 366. Upon this question Justice WELLS, who delivered the opinion, says: "The plaintiff concludes that the rule does not apply, because he does not seek to enforce any rights which depend at all upon the illegal transaction; that both the legal title which he asserts, and the proofs by which he maintains that title, not only omit to disclose, but utterly disregard the unlawful sale; whereas it is the defendant who is obliged to set up the illegal conduct of himself and the plaintiff alike, in order to justify his retention of the plaintiff's property. But the illegality lies directly in the course of events which placed the property in the hands of the defendant, and made it necessary for the plaintiff to resort to this suit to regain it. It is inseparably connected with the origin of the cause of action, *and it is immaterial which party discloses it to the court."* We think it very clear that the appellant could not succeed in an action to compel the delivery of the bonds upon such petition.

The learned counsel for the appellant also insists that if a court of equity would not aid the appellant in enforcing the delivery of the bonds, neither will it aid this plaintiff in his action to restrain the issuing of them, for the reason that he has shown himself equally guilty as the appellant of a violation of the law.

To this there are several answers: *First*, it does not appear with certainty from the complaint that the plaintiff was one of the persons and tax-payers who signed the petition on Sunday; *second*, the plaintiff has made out a case by showing that the petition was invalid, by the fact that twelve tax-payers other than himself signed on Sunday, each one of whose signatures was necessary to the sufficiency of the petition in respect to numbers; *third*, there does not appear to be any good

reason why the plaintiff may not protect his property rights against a claim made against them by the appellant, which is based upon an unexecuted contract made in violation of law. The plaintiff makes out a good cause for relief when he shows that the petition was signed by less than half of the resident tax-payers of the town, including himself, and excluding those other than himself who signed on Sunday. He need not and does not question his own signature in order to avoid the effect of it. He shows it wholly ineffectual without regard to his own connection therewith. But suppose it necessary for the plaintiff to allege that the petition is ineffectual because his signature was obtained thereto on Sunday: will this prevent him from successfully invoking the aid of a court of equity to restrain the defendant company from obtaining any rights against himself and the other tax-payers of the town, based upon such signature so made? We think this question must be answered in the negative. The plaintiff does not seek to maintain his rights upon the alleged insufficient petition. His demand for relief against the threatened unlawful taxation of his property by the officers of the town and the defendant company, is based upon the proposition that the company has not taken the steps required by the statute to authorize such taxation; and, in order to show that, he shows that the petition they have obtained was obtained in such manner that neither a court of law nor of equity will permit its use by the company to found any right thereon. He only questions the right of the company to the bonds. His own right to have his land free from taxation to pay the principal and interest of bonds issued in aid of the defendant railroad company, is predicated upon the want of power in the officers of the town to charge his property with such tax. The officers and company claim the power by virtue of the petition, and threaten to execute such power, notwithstanding the fact that it is admitted that it was illegally obtained and is therefore ineffectual to confer upon the town officers the right to impose such tax.

De Forth vs. The Wisconsin & Minnesota Railroad Co., imp.

It seems to us that the town and defendant company are in no better position to claim the right to have these bonds issued, than a party would be who claimed the enforcement of an executory contract made on Sunday. Upon such contract, if it be for the delivery of goods, and the delivery be not in fact made, the vendee acquires no title to the same. The contract to deliver, having been made on Sunday, is ineffectual to compel the vendor to make the delivery; and if the vendee should take possession of them without the consent of the vendor, he would be a mere trespasser, and the vendor could maintain any proper action against him to recover the possession of the same, or the value thereof, notwithstanding his executory contract made on Sunday; and the fact that such executory contract was made by the plaintiff, would be no defense to such action. If a contract made on Sunday is fully executed, it is as effectual to fix the rights of the parties as though made on any other day; but if it be merely executory, or some part of it be executory, it is simply void as to such unexecuted part, or at least ineffectual to confer any rights under it, and neither party can enforce the same. This was held by this court in the case of *Troewert v. Decker, supra*, and the cases cited therein. See, also, *Smith v. Bean*, 15 N. H., 577.

In the case of *Clough v. Davis*, 9 N. H., 500, a note was executed on Sunday and put in the hands of another to deliver on Monday, and it was so delivered. The court say: "The note was written and signed on Sunday, but not delivered. The contract was not completed. The instrument given in evidence was not a subsisting contract on Sunday, nor so regarded by either party. It was wholly inoperative, unless something more had been done. But the note was placed in the hands of an agent with authority to deliver it upon the next day, and he did deliver it accordingly. If, however, a secular contract made on the Sabbath is prohibited, and therefore void, the authority to the agent, for the same reason, is equally against law and void." The court further said that, the

proof showing that the defendant had promised to pay the note after its delivery, such promise was a ratification of the act of the person who delivered the same, and bound the defendant. This case is commented upon in *Smith v. Bean, supra,* as follows: " But there the note was written on Sunday and given to an agent with authority to deliver it on Monday. No contract was completed on Sunday, but something remained to be done. The attempt to confer the authority on Sunday was ineffectual. It was the simple case of a person assuming to act as agent for another without authority. But the note came into the hands of the payee, whether with or without an original authority was immaterial, for, while it was there, the defendant promised to pay it, and thus made a new contract."

In the case at bar, the most that the plaintiff and the other petitioners did who signed on Sunday, was to authorize the agent of the defendant company to present such petition, so signed by them, on some secular day, and demand the issuing of the bonds according to the proposition made by the town. This contract or authority, being given on Sunday, was ineffectual and void, and, within the authorities above cited, would confer no power upon the company, having notice of the fact, to lawfully demand or receive the bonds, even though such power had never been formally revoked by the parties giving the same. No rights could be acquired under such authority given on Sunday, by any person having knowledge of the facts, except upon clear proof that the signers had ratified the authority of the company by some subsequent act on a secular day.

Whether a court of equity would release the plaintiff, or other persons in the same situation, had he permitted the petition to be used and the bonds issued, and after the company had expended money in constructing the proposed road, relying upon the validity of such bonds, is not a question in this case. The complaint shows that the plaintiff proceeded promptly to notify the town authorities and the defendant

company that he did not propose to ratify in any way the illegal and void authority which the company had filed with the town clerk as a basis for the demand of the bonds. This suit was commenced within about three weeks after the petition was signed and filed in the clerk's office, and it nowhere appears from the complaint that the company had changed its position in any way in reliance upon its right to these bonds.

The plaintiff stands in a similar situation to a party who, on Sunday, authorized a third person, as his agent, to execute a contract for him or deliver property on some secular day, and who forbids the execution or delivery before it is effected. In such case, so far as such party's rights are concerned, he stands in the same situation as if no such authority had been given, and such third person cannot make such ineffectual and revoked authority a foundation for the assertion of any right on his part. In such case there is no reason why a court of equity should not lend its aid to protect the rights of the party who has revoked such agency, especially in a case like the one at bar, where the party against whom such aid is sought is seeking to enforce the contract without showing that any property or other consideration has been given to and received by the party insisting upon such revocation, and which he refuses to restore; in short, when the contract sought to be enforced is wholly unexecuted on both sides. Had the contract been executed by one party, there would be great force in the argument that a court of equity would not aid the other in avoiding the contract on his part. This is not a case of that kind. It is simply a proceeding to prevent the completion of a contract, pending its negotiation, and while still unexecuted by either party. We think the plaintiff has a good standing in a court of equity, and a clear right to the relief demanded.

The objection made by the learned counsel for the appellant that the complaint does not allege that the signers of the petition, who signed on Sunday, were not " persons who conscientiously believed that the seventh or any other day of the week

ought to be observed as the Sabbath," etc., as prescribed in section 4596, R. S., and is bad for that reason, is not, we think, sustained by the authorities. This was one of the points decided in the case of *Troewert v. Decker*, in this court, and was decided against the theory of the appellant upon the authority of the cases of *Bosworth v. Swansey*, 10 Met., 363; *Jones v. Andover*, 10 Allen, 18, 21; and *Hinckly v. Penobscott*, 42 Me., 89. It is true, these cases arose upon the exceptions contained in section 4595; but the principle is, we think, the same as to the exceptions contained in the next section. These cases hold that the legal presumption is against the validity of an act done on Sunday, and it is for the party who alleges that the act is valid, notwithstanding that fact, to make the proof showing either that the act done was one of the excepted ones, or that the person performing the act was one of the persons excepted from the provisions of the statute.

Having come to the conclusion that the petition was wholly ineffectual under the statute to authorize the appellant to demand the bonds of the town, or to authorize the officers thereof to issue and deliver them to the appellant, and that the plaintiff is not in such situation in regard to the transaction as to prevent him from invoking the aid of the court for the purpose of prohibiting the threatened illegal proceedings on the part of the appellant and town officers, it becomes unnecessary, in the disposition of this case, to. pass upon the constitutionality of the act under which the proceedings were had.

The appellant's counsel makes objection to the taxation of costs, and insists that it was error to tax all the costs against this appellant; that they should have been taxed jointly against all the defendants, or, if not so taxed, the costs for serving the papers upon the other defendants should not have been taxed against him. We are inclined to hold that the question of costs was very much within the discretion of the circuit court. The action is an equitable one, and there does not appear to be any injustice in taxing the costs against the party who is

in fact the real and only party in interest as a defendant. The town officers in this case made no defense. They were wholly indifferent between the plaintiff and the company, and still they were very proper, if not necessary, parties to the action. The court in its discretion charged the company with the costs of the action, and we are not prepared to say that there was any abuse of discretion in so doing.

*By the Court.* — The judgment of the circuit court is affirmed.