### Troewert, Administrator, vs. Decker.

*December 18, 1880 — January 11, 1881.*

*Loan of money on Sunday.*

1. The loaning of money on Sunday is "business" within the meaning of the statute, and presumptively illegal.

2. Any party desiring to bring himself within the exception of the statute, has the burden of doing so.

3. The mere fact that a person borrowing money on Sunday retains it and converts it to his own use, does not raise an implied promise binding in law and upon which an action can be maintained.

Troewert, Administrator, vs. Decker.

APPEAL from the Circuit Court for *Sheboygan* County.

The defendant appealed from a judgment in favor of the plaintiff. The case is stated in the opinion.

*Conrad Krez*, for appellant.

*Wm. H. Seaman*, for respondent.

CASSODAY, J. This action is to recover for a sum of money alleged to have been "lent" to the defendant at his request, upon his promise to pay back the same whenever thereunto requested, but which had never been paid to the intestate, nor to the plantiff as administrator, although the defendant had often been requested to repay the same before the commencement of this action. The answer "admits the receipt of the money," but alleges that it was paid to him, and the contract and promise to repay the same was made, on Sunday, and therefore denies the indebtedness. The undisputed evidence shows that the loan and promise were made on a Sunday. The court found that the defendant had and received the money from the deceased on Sunday, " to be repaid . . . on demand," but that the defendant had " failed and neglected to repay " the same or any part thereof, and as a conclusion of law that the plaintiff was entitled to recover the amount due.

Section 4595, R. S., provides, among other things, that "any person who shall . . . do any manner of labor, business or work, except only works of necessity and charity . . . on the first day of the week, shall be punished by fine not exceeding ten dollars." The court does not find, and there is no evidence to show, that the case comes within the exception named in the statute. The loan of money, and the promise to repay, alleged in the complaint and admitted in the answer, were clearly "business," within the meaning of this section, and hence it was presumptively illegal. If it was possible to bring the case within the exception named in the statute, the burden was on the plaintiff to do so. *Bosworth v. Swansey*, 10 Met., 363; *Jones v. Andover*, 10 Allen, 18,

21; *Hinckley v. Penobscot*, 42 Me., 89. But it is urged by counsel with some plausibility, that, although the contract was illegal. and void, yet the subsequent retention of the money without offering to return it, and the using of it, and the refusing to pay it back, constituted a ratification, and an implied promise to repay upon each subsequent secular day. In support of this theory counsel cite *Williams v. Paul*, 6 Bing., 653; *Adams v. Gay*, 19 Vt., 358; *Sumner v. Jones*, 24 Vt., 317; *Brown v. Timmany*, 20 Ohio, 82; *Tucker v. Mowrey*, 12 Mich., 378; *Dodson v. Harris*, 10 Ala., 566; *Sayre v. Wheeler*, 31 Iowa, 112.

In *Williams v. Paul* the bargain was made on Saturday, and the price to be subsequently paid was agreed upon at the same time, subject to the defendant's approval of the property upon inspection the next morning, which was Sunday. Accordingly, on Sunday the inspection was had, and the property approved and delivered. Subsequently, the defendant, being applied to for the price, said he would settle at a time named. Failing to do so, an action was brought for the price, and the plaintiff recovered a verdict, and the rule *nisi* to set it aside and enter a nonsuit under the statute of 29 Charles II., c. 7, substantially like ours, was discharged by the court of common pleas. PARK, J., stated the grounds thus: "Here it appears that the defendant not only retained the animal, but made a new promise to pay subsequently to the Sunday, and his present refusal is not consistent with the practice of a very sincere Christian." Eight years after, in *Simpson v. Nicholls*, 3 Mees. & W., 240, 244, and a note to that case found in 5 Mees. & W., 702, it was "doubted whether the case of *Williams v. Paul* could be supported in law," on the ground "that although the contract was void as being made on a Sunday, yet as the property in the goods passed by delivery, the promise made on the following day to pay for them could not constitute any new consideration;" and the court of exchequer held on demurrer that the plaintiff could not recover the value, on the

ground that defendant, after the sale and delivery of the goods, kept them for his own use without returning or offering to return them.

In *Tuckerman v. Hinkley*, 9 Allen, 454, it is said by CHAPMAN, J., that "the case of *Williams v. Paul*, 6 Bing., 653, . . . is not to be relied on." In *Kountz v. Dickson*, 40 Miss., 341, 345–6, the court said: "We have examined these cases (among which are *Williams v. Paul* and *Adams v. Gay*, 19 Vt., 369, *supra*), . . . and we are constrained to say that they are founded on reasons which appear to us to set aside the most reverend and firmly settled principles of law applicable to the subject of illegal contracts. Were we to follow them we should have to overrule principles repeatedly and invariably recognized by this court." In *Boutelle v. Melendy*, 19 N. H., 196, *Williams v. Paul* is overruled, and the case of *Simpson v. Nicholls, supra*, followed, and the court held that "an illegal contract is incapable of ratification, or of becoming the consideration of a subsequent promise." *Williams v. Paul* was followed in *Adams v. Gay, supra*, but in the later case of *Sumner v. Jones*, 24 Vt., 317, the court said: "Whatever may be the views of the English courts in relation to the case of *Williams v. Paul*, that case has been referred to in all the above cases (*Barron v. Pettes*, 18 Vt., 385; *Adams v. Gay*, 19 Vt., 358; *Sargeant v. Butts*, 21 Vt., 99); in some without the expression of any satisfaction, and in others by a direct approval of its doctrine. The principle of these cases, must decide the present." And on page 322 the court said: "It is evident that the English authorities have not gone to this extent" (an affirmation and promise to pay the note implied by the retention of the goods as sufficient to sustain an action); "for while it has been held that a subsequent promise is sufficient to sustain a recovery for the value of the property, it has never been held in those courts that a promise can be implied from the mere fact of a retention of the property, or that subsequent payments are equivalent to an express

promise." In that case it was held that a note given on Sunday for a horse then purchased, and subsequent partial payments, and retention of the horse without offering to return the same, was such a ratification as would maintain a suit for the balance of the note. But this decision, as we have seen, was based upon former decisions in that state, acknowledged to be in conflict with the later English cases, and certainly in direct conflict with the whole current of Massachusetts cases. *Myers v. Meinrath*, 101 Mass., 366. In this last case it was expressly held that "an action will not lie for the conversion of a chattel sold and delivered by the plaintiff to the defendant in exchange for another chattel on the Lord's day, and retained by the defendant afterwards, notwithstanding the return by the plaintiff of the chattel for which it was exchanged, and his demand for a corresponding return by the defendant." The later English cases, the New Hampshire and Massachusetts cases, are also followed in Maine. *Pope v. Linn*, 50 Me., 83.

In the case of *Tucker v. Mowrey*, 12 Mich., 378, it was held that the contract of sale and delivery made on Sunday was so utterly void that no title passed, and that therefore the vendor might on a subsequent day tender back the price and recover the property. No case is cited in support of this doctrine, except an early case in the same state, which is followed. But this is going much further than *Williams v. Paul*, and much further than the Vermont cases; for they allow subsequent ratification on the ground that the property passes, and that the transaction is not *malum in se* but *malum prohibitum*. *Dodson v. Harris*, 10 Ala., 566, goes on the same theory as *Tucker v. Mowrey*, and the same remarks are applicable to it. The true rule seems to be stated by MAULE, J., in *Fivaz v. Nicholls*, 2 M., G. & S., 501, where he said: "The plaintiff cannot recover where, in order to sustain his supposed claim, he must set up an illegal agreement to which he himself has been a party." So PARKER, C. J., in *Smith v. Bean*, 15 N. H.,

577, said: "It is generally said of such illegal contract that it is void. If this were so, and the contract, in the broad sense of the term, were void, no property would pass by it; the vendor might reclaim the property at will, and, being his property, it would be subject to attachment and levy by his creditors, in the same manner as if the attempt to sell had never been made. But this is not what is intended by such phraseology. The transaction being illegal, the law leaves parties to suffer the consequences of their illegal acts. The contract is void so far as it is attempted to be made the foundation of legal proceedings. The law will not interfere to assist the vendor to recover the price." These same remarks are quoted with approval by the court in *Perkins v. Jones*, 26 Ind., 502. In *Holt v. Green*, 73 Pa. St., 198, MERCUR, J., said: "The test, whether a demand connected with an illegal transaction is capable of being enforced by law, is, whether the plaintiff requires the aid of the illegal transaction to establish his case. If a plaintiff cannot open his case without showing that he has broken the law, a court will not assist him. . . . The principle to be extracted from all the cases is, that the law will not lend its support to a claim founded on its own violation."

In *Tillock v. Webb*, 56 Me., 100, APPLETON, C. J., said: "The only consideration for the note is the liability of the defendant under a contract prohibited by law. But this cannot be regarded as a legal consideration. The rights of the parties remain as if no note had been given. The original contract, being void, was not susceptible of ratification." The same rule obtains in Massachusetts, New Hampshire and Connecticut. *Cranson v. Goss*, 107 Mass., 440, and cases there cited. In *Finn v. Donahue*, 35 Conn., 216, the facts were substantially the same as here, and it was held that the plaintiff could not recover for the loan, nor in an action of general *assumpsit* upon a demand afterwards made, as for money of the plaintiff

in the hands of the defendant; that a party could not be permitted to trace his title through an illegal act.

The decisions of this court are clearly in harmony with the weight of authority upon the point here involved, as above indicated. In *Moore v. Kendall*, 2 Pin., 99, the court said: "Admitting the sale of the goods to have been made on Sunday, it by no means follows that it was void for all purposes. There was an actual transfer of property from James Moore to his brother, the plaintiff in error, and it was not possible thereafter for James or his assigns to recover it back. . . . The point before us is simply this: whether any man, under any circumstances, can make a valid transfer of property on Sunday. If he cannot, the instructions were right; if he can, they were wrong. I think it would be carrying the rule of law further than the policy of the statute requires and further than the current of decisions on this subject warrants, to deny that such a transfer, when actually completed without fraud, should stand between the parties." Following that decision, this court, in *Hill v. Sherwood*, 3 Wis., 343, held that "a contract or agreement made on Sunday will not be enforced in a court of law." *Melchoir v. McCarty*, 31 Wis., 252, is to the same effect, and there too there was a subsequent promise. In *Knox v. Clifford*, 38 Wis., 656, the case of *Hill v. Sherwood* is referred to approvingly. In the case before us, unlike *Williams v. Paul* and *Melchoir v. McCarty*, there was no subsequent express promise, written or oral, and, unlike some of the other cases referred to, there was no subsequent partial payment. Whether in such last-mentioned cases an action could be maintained to recover the balance of the loan, it is not necessary here to decide. Confining ourselves to the facts of the case here presented, and without questioning *Melchoir v. McCarty*, we desire simply to hold: (1) The loaning of money on Sunday is "business," within the meaning of the statute, and presumptively illegal. (2) Any party desiring to bring himself

within the exception of the statute has the burden of doing so. (3) The mere fact that a person borrowing money on Sunday retains it and converts it to his own use, does not raise an implied promise binding in law, and upon which an action can be maintained.

*By the Court.* — The judgment of the circuit court is reversed, and the cause is remanded with directions to enter judgment for the defendant.