GIST and another, Respondents, vs. JOHNSON-CAREY COMPANY, Appellant.

*May 26—October 6, 1914.*

*Sunday: Contracts: Validity: Ratification: Performance: Partial payments: New contract: Evidence: Sufficiency: Special verdict: Findings by court, when presumed: Immaterial questions: Settlement: Estoppel: Pleading: Amendment at trial: Trial by same jury: Terms: Discretion.*

1. A contract made and delivered on Sunday is void and incapable of ratification.

2. The performance of labor and services under and in execution of a contract void because made on Sunday, did not create a new contract upon the same terms as the Sunday contract, where the minds of the parties were not in accord as to the construction of that contract. MARSHALL, J., is of the opinion that the acts of the parties in this case did establish a new contract.

3. Where, in an action upon express contract which proved to be void because made on Sunday, the complaint, after that fact was disclosed, was amended and the trial proceeded upon *quantum meruit*, no request being made to submit to the jury the question whether a new contract was made on the terms of the Sunday contract, the trial court was authorized under sec. 2858m, Stats., to find on that subject, and a finding thereon supporting the judgment will be presumed on appeal if there was evidence to support it.

4. Partial payments made under a Sunday contract are not sufficient to import a new contract, especially where they are for labor performed, upon monthly estimates which are subject to change.

5. In an action to recover for labor and services, a claim by defendant, made for the first time on appeal, that the work was done under a contract based on a telegram antedating the contract sued on (which was void because made on Sunday), is *held* not to be sustained by the facts.

6. The fact that, a disagreement having arisen between the parties as to the proper classification of materials being removed under a contract for railroad construction work, the defendant offered to relieve plaintiffs of the balance of the work if they were dissatisfied with defendant's classification, and that they declined to quit the work, does not show an agreement on their part to accept such classification.

7. In an action to recover for railroad construction work, where the contract sued on was void because made on Sunday and the trial proceeded on *quantum meruit,* the court properly refused to submit to the jury a question relating to the classification of materials under such contract, that question being wholly immaterial.

8. The acceptance by plaintiffs of partial payments for railroad construction work, based upon monthly estimates by the engineers which were subject to change upon final adjustment, and where defendant understood all the time that they were insisting upon a different classification of the material handled from that upon which such estimates were made, did not operate as a settlement or as an estoppel of the plaintiffs.

9. Nor can defendant, who was himself a subcontractor for such work, urge an estoppel against plaintiffs on the ground that he settled with the principal contractor in reliance upon such estimates and partial payments and plaintiffs' receipts therefor, especially where such settlement was made after suit brought by plaintiffs and with full knowledge of what they claimed.

10. The principle of estoppel cannot be invoked to give life and validity to a Sunday contract.

11. No request having been made to submit the question of an accord and satisfaction, based upon the monthly estimates and the corresponding partial payments, that issue, if assumed to be in the case though not specially pleaded, must, under sec. 2858*m,* Stats., be deemed to have been found by the court against the appellant, there being ample evidence to support such a finding.

12. If there is any credible evidence to support the jury's finding upon a question of fact, it will not be disturbed on appeal.

13. In an action to recover for labor and services upon an express contract, where, after the trial had progressed for eight days, defendant raised the point that the contract was made on Sunday, a fact which was known to its counsel several days before the trial commenced, and the complaint was thereupon amended so as to allege a cause of action on *quantum meruit,* there was no error in proceeding with the trial before the same jury.

14. Whether or not terms should be imposed upon the allowance of an amendment to the complaint during the trial, changing the cause of action from one upon express contract to one on *quantum meruit,* rests in the sound discretion of the trial court.

APPEAL from a judgment of the circuit court for Columbia county: CHESTER A. FOWLER, Circuit Judge. *Affirmed.*

The plaintiffs sued to recover for services performed in the construction of a railroad and doing certain grading. The original complaint was amended, and under the amended complaint the plaintiffs set out two causes of action, the first upon an express contract alleged to have been entered into between the plaintiffs and defendant on April 25, 1910, a copy of which contract is attached to the complaint. The first cause of action alleges the execution of the contract with the defendant which provided that the plaintiffs would do the grading between stations 3464 and 3755 in Columbia county on the new line of railroad then being constructed between Clyman and Necedah, Wisconsin; that Winston Brothers Company was the principal and general contractor of the railway company and that the defendant was the subcontractor of said Winston Brothers Company; that before the commencement of the action the plaintiffs performed all the terms of their contract; that in grading said line between said stations and in the performance of said contract the plaintiffs necessarily excavated, hauled, and moved earth and rock as follows, to wit:

Earth, 205,745 cu. yds. at 27c. per cu. yd................ $55,551 15
Loose rock, 29,734 cu. yds. at 42c. per cu. yd............ 12,488 28
Solid sand rock, 50,000 cu. yds. at 70c. per cu. yd........ 35,000 00
Solid lime rock, 44,898 cu. yds. at 80c. per cu. yd........ 35,918 40

$138,957 83

That by the terms of said contract the defendant agreed to pay said prices for said work, and prior to the commencement of this action the defendant became indebted to the plaintiffs in the sum of $138,957.83.

It is further alleged that the defendant agreed to provide for plaintiffs' right of way between certain stations for the grading work specified in the contract, and that it failed for a long period of time to do so, in consequence of which plaintiffs sustained damages; that defendant has paid the plaintiffs the sum of $88,341 and no more.

For a second cause of action, in addition to other facts pleaded, it is alleged that several months prior to the commencement of this action a controversy arose between the parties hereto, principally regarding the excavation of large amounts of material moved by plaintiffs in the prosecution of the work embraced in said contract between the parties, the defendant insisting that it would pay plaintiffs therefor only after the receipt of a final estimate of and according to the classification placed thereon by the chief engineer of the railway company, and the plaintiffs insisting, as they now insist, that they were and are in no manner bound by the classification or estimate thereof which should be placed thereon by the engineer, and that final settlement would not be accepted by them except on the basis of a classification of materials which should accord with the actual facts; that the estimate of the railroad company and the engineers, particularly as regards the classifications of large quantities of material moved by plaintiffs in the execution of the contract, was made without investigation and in ignorance and disregard of the nature of such material and of the meaning of the contract and at variance with the true and proper classification thereof; that in grading said line and in the performance of said contract the plaintiffs necessarily excavated, hauled, and moved earth and rock as follows:

Earth, 205,745 cu. yds. at 27c. per cu. yd................. $55,551 15
Loose rock, 29,734 cu. yds. at 42c. per cu. yd............  12,488 28
Solid lime rock, 44,898 cu. yds. at 80c. per cu. yd........  35,918 40

That the defendant agreed to pay the plaintiffs for the excavation, hauling, and moving of the aforesaid materials the amounts specified; that in doing said work, and particularly at what was known as cut number 1, the plaintiffs necessarily excavated, hauled, and moved 50,000 cubic yards of material other and in addition to the said earth, loose rock, and solid lime rock above mentioned; that said 50,000 cubic yards did not consist of nor was the same customarily or generally

known as earth, loose rock, solid lime rock, or solid granite, but of a different formation; that at the time of the commencement of the excavation of said additional 50,000 cubic yards it was understood and agreed between the parties that compensation for the hauling thereof should not be based upon the prices named in said contract for the handling of earth.    Plaintiffs upon information and belief allege that said additional material was not earth, loose rock, solid sand rock, solid lime rock, or solid granite rock, but that the material was not within the contemplation of the parties when said contract was made and for the hauling of which the contract makes no provision, and that the same was excavated, hauled, and moved at the special instance and request of defendant, and that the defendant agreed to pay to the plaintiffs the reasonable value per cubic yard for the excavating, hauling, and moving thereof, and that such reasonable value was and is seventy cents per cubic yard.

The parties went to trial upon the foregoing complaint and answer thereto.    After the plaintiffs had made out their case and rested, the defendant moved for a nonsuit as to the second cause of action, which was granted.    The defendant then raised the point that the contract set forth in the complaint was executed on Sunday, therefore was void, and insisted that the complaint be dismissed.    The court refused to dismiss the complaint, but ordered the parties to proceed on the theory that plaintiffs were entitled to recover on *quantum meruit* and ordered the pleadings amended.    The pleadings were amended accordingly and further proof was made by plaintiffs and evidence upon the issues also offered by defendant.    The jury returned the following verdict:

"(1) Was there a general custom prevailing in this section of the United States at the time the work in controversy herein was performed, as between contractors and subcontractors engaged in railroad construction work, in the absence of express stipulation or agreement upon the subject, that the subcontractor should accept and be bound by the classification

and estimates of the railway company's engineer in comput-
ing the subcontractor's compensation? *A.* No.

"(2) What was the reasonable value of the work per-
formed by the plaintiffs? *A.* $130,000."

Judgment was rendered for the plaintiffs on the verdict for
the amount of the reasonable value of the work performed by
the plaintiffs, with interest, less the amount which had been
paid, from which judgment this appeal was taken.

For the appellant there were briefs by *Ely & Bush* and
*Daniel H. Grady,* and oral argument by *Mr. Grady.* They
contended, *inter alia,* that the acts of the parties performed
on secular days through a course of seventeen months consti-
tuted a full, complete, and binding contract. *Allen v. Green-
wood,* 147 Wis. 626, 133 N. W. 1094; *Schmidt v. Thomas,*
75 Wis. 529, 44 N. W. 771; *Melchoir v. McCarty,* 31 Wis.
252; *Sherry v. Madler,* 123 Wis. 621, 101 N. W. 1095;
*King v. Graef,* 136 Wis. 548, 117 N. W. 1058; *O'Day v.
Meyers,* 147 Wis. 549, 133 N. W. 605. The facts show a
settlement and payment *pro tanto* as the work progressed, and
plaintiffs are now estopped to claim on a different basis.
*Kercheval v. Doty,* 31 Wis. 476; *Merriam v. Field,* 29 Wis.
592; *Wheeler v. Meriden C. Co.* 23 Wis. 584; *Strasser v.
Conklin,* 54 Wis. 102, 11 N. W. 254; *Palmer v. Yager,* 20
Wis. 91; *Woodford v. Marshall,* 72 Wis. 129, 39 N. W. 376;
*Sholes v. State,* 2 Pin. 499; *Burnham v. Milwaukee,* 100
Wis. 55, 75 N. W. 1014; *Conant v. Estate of Kimball,* 95
Wis. 550, 70 N. W. 74; *Harris v. Kennedy,* 48 Wis. 500, 4
N. W. 651; *Baxter v. State,* 9 Wis. 38; *Sicotte v. Barber,* 83
Wis. 431, 53 N. W. 697; *U. S. v. Child,* 12 Wall. 232. The
court erred in permitting the complaint to be amended on
the trial and in proceeding with the trial before the same
jury. *Manitowoc S. B. Works v. Manitowoc G. Co.* 120
Wis. 1, 97 N. W. .515; *Jacobson v. Tallard,* 116 Wis. 662, 93
N. W. 841. If amendment was proper it should have been
upon terms. *Schieffelin v. Whipple,* 10 Wis. 81; *Rublee v.
Tibbetts,* 26 Wis. 399. The Sunday contract was void for

all purposes and should not have been admitted in evidence. 13 Ency. of Ev. 585; *Brandeis v. Neustadtl,* 13 Wis. 142; *Salb v. Campbell,* 65 Wis. 405, 27 N. W. 45; *Hillebrands v. Nibbelink,* 40 Mich. 646.

For the respondents there was a brief by *W. S. Stroud, R. F. Clark,* and *Olin, Butler & Curkeet,* and oral argument by *Mr. Stroud, Mr. H. L. Butler,* and *Mr. Clark.*

The following opinion was filed June 17, 1914:

KERWIN, J.    It is assigned as error that the court erred in refusing to answer question number 2 of the special verdict $107,728.10, and in refusing to instruct the jury in reference to question number 2 as requested, and in refusing to include in the special verdict questions proposed by counsel for defendant.

These assignments of error go to the point insisted upon by counsel for appellant, namely, that the plaintiffs were bound by the alleged contract set up in the complaint as having been executed on April 25, 1910, and remade afterwards, and also by estoppel. It was conceded, after plaintiffs rested, that this contract, although alleged to have been executed on April 25, 1910, and bearing that date, was in fact fully executed and delivered on April 24, 1910, which was Sunday, and was therefore void. The defendant, however, contends that, since the plaintiffs set up this contract in their complaint and made proof of the execution of the work under it, they adopted it, and that their acts amounted to the making of a new contract on the terms of the Sunday contract, therefore they are bound by it. This contention is not consistent with counsel's position on the trial, since he insisted there, after plaintiffs had made their proof, that the contract set up in the complaint was void because executed on Sunday, therefore no recovery could be had on it.

The contract having been made and delivered on Sunday was void and incapable of ratification. *King v. Graef,* 136

Wis. 548, 117 N. W. 1058; *Pearson v. Kelly,* 122 Wis. 660, 100 N. W. 1064; *Sherry v. Madler,* 123 Wis. 621, 101 N. W. 1095. It is insisted, however, by counsel for appellant that a new contract was made by the parties on the same terms as the Sunday contract and that their acts in execution of the Sunday contract and in performing the work under it show this. We cannot agree with counsel in this contention. We think the evidence not only fails to show a new contract, but on the contrary shows that no new contract was made. In order to make a contract on the terms specified in the Sunday contract the minds of the parties must meet on the terms of the contract. The acts shown in execution of the work were clearly done, and so understood by the parties, under the Sunday contract. And it further appears that in the execution of the work and performance under the Sunday contract the parties did not agree upon its terms, especially on the terms respecting classification and estimates. Neither party, upon the undisputed evidence, had any thought of making a new contract on the terms of the Sunday contract, but both were operating under the Sunday contract, the construction of which they did not even agree upon.

Even if acts of the parties under a void contract could have the effect of infusing into it life by way of creating a new contract, the execution must be such as to bring the minds of the parties in accord upon all terms of the contract. This clearly was not the case here. The Sunday contract was not even fully executed or the terms of it either agreed upon or performed, at least as to payment or amount due, after the day of its execution, April 24, 1910.

The court below was asked to change the answer of the jury to the second question of the special verdict from $130,000 to $107,728.10, the theory of counsel for appellant being that, if a new contract was made on the terms of the Sunday contract, the amount of plaintiffs' recovery would be limited to $107,728.10 less the amount paid. No issue of new con-

tract was made by the pleadings or insisted upon before the plaintiffs rested, and as soon as the question was raised that the contract was made on Sunday, therefore void, further proceedings were had on *quantum meruit.* No request was made to submit to the jury the question whether a new contract had been made, and the court below was therefore authorized to find on the subject under sec. 2858m, Stats. The evidence was ample to show no new contract was made; indeed it is very doubtful whether there was sufficient evidence to support a finding that a new contract on the terms of the Sunday contract was made. But we need not and do not decide that question.

Partial payments made under a Sunday contract are not sufficient to import a new contract. *Vinz v. Beatly,* 61 Wis. 645, 21 N. W. 787; *Troewert v. Decker,* 51 Wis. 46, 8 N. W. 26; *Reeves v. Butcher,* 31 N. J. Law, 224; *Pillen v. Erickson,* 125 Mich. 68, 83 N. W. 1023; *Melchoir v. Mc-Carly,* 31 Wis. 252; *Williams v. Lane,* 87 Wis. 152, 58 N. W. 77. Moreover, the payments made were made under monthly estimates, and were not final estimates, but subject to change both as to estimates and classification of material.

A contention is made by counsel for appellant that prior to the date of the Sunday contract and on April 20, 1910, plaintiffs sent a telegram to defendant offering to do the work, and because it afterwards did the work there was created a contract prior to the Sunday contract, similar substantially to the Sunday contract. This contention cannot be sustained for many reasons. It is clear from the evidence that the work was not done under such alleged contract and that the parties never understood that it was; that no contract similar in terms to the Sunday contract was made prior to April 24, 1910. The defendant did not even request the submission to the jury of a question as to whether such a contract was made.

After the work had been partially performed a controversy arose between plaintiffs and defendant as to classification of material being removed by plaintiffs, the plaintiffs claiming

a different classification than that being made by defendant in its monthly estimates.    Thereupon defendant sent to *George W. Gist,* one of the plaintiffs, the following telegram: "In case no classification is given you, do you wish to pull off that work?    Would like to know it now as we have outfit and organization ready to install.    Answer."    Defendant claims plaintiffs did not answer, as Carey, of defendant company, testified that he did not receive any reply.    Carey further testified that after sending the telegram he had a talk with *Gist,* of plaintiff company, about pulling off the work, and asked him if he did not want to pull off, and that *Gist* said he had been to great expense getting on'there and did not feel like pulling off.    That Carey then offered him $1,000 or $2,000 if he would pull off.    Carey testified: "I told him if it was not satisfactory to him he could pull off.    I don't remember just what he said, but he didn't want to."    *Gist* testified that he replied to the telegram and that about eighty per cent. or more of cut number 1 had been excavated when the telegram was received.

It is quite obvious from the evidence that defendant did not consider it had the right to discharge plaintiffs.    The evidence merely shows that defendant was endeavoring to get an agreement with plaintiffs to discontinue the work.    Even if it be conceded that defendant had the right to force terms or require plaintiffs to quit, the evidence does not show that it did so.    Had the defendant given plaintiffs peremptory orders to "pull off" or continue under classification as claimed by defendant, the situation would be different.

Plaintiffs continued on the work to completion, and it is clear from the evidence that no agreement was made as to classification or terms of the contract.    The learned trial judge in his opinion, referring to the fact that defendant offered to relieve the plaintiffs from their contract, said:

"But the plaintiffs, as defendant knew, insisted on their right to complete the job and be compensated according to their contract as they construed it.    The defendant never de-

manded of the plaintiffs to accept the railway engineer's esti-
mates and classification or quit the job, but only offered to
take the work off their hands and do it itself if the plaintiffs
wished.    Both parties understood and acted on the under-
standing that the plaintiffs could not lawfully be prevented
from completing the work under the said contract."

Both parties were in fact acting under the Sunday con-
tract, though not agreeing upon the construction which should
be given its terms.

Error is assigned for refusal to submit the following ques-
tions to the jury as part of the special verdict:

"(1) Was the material in cut number 1, referred to as
hard material, properly classified as earth?

"(2) Did *Mr. Gist* by accepting monthly payments and
signing the accompanying receipts, in view of the written
statements, estimates, and classifications accompanying said
receipts and statements and all the conversations or communi-
cations had by him with or from Mr. Carey or Mr. Walsh re-
specting the matter of the railway company's engineer's clas-
sifications and estimates, give the defendant to understand
that he would accept payment according to the estimates and
classifications of the railway company's engineer?

(3) Did *Mr. Gist,* by accepting monthly payments and
signing the accompanying receipts, in view of the written
statements, estimates, and classifications accompanying said
receipts and statements and all the conversations or communi-
cations had by him with or from Mr. Carey or Mr. Walsh re-
specting the matter of the railway company's engineer's clas-
sifications and estimates, give the defendant to understand
that.he would accept payment according to the engineer's es-
timates and classification in the manner and at the rate of
compensation shown upon said statements?

"(4) Did the defendant allow *Mr. Gist* to proceed with
the work because of such understanding?

"(5) Did the defendant act to its prejudice or detriment
because of such understanding?"

Respecting request No. 1, as the court below held, it was
wholly immaterial, because the contract classifying the ma-
terial was void, and the plaintiffs were entitled to recover the

reasonable value of their work no matter what the classification in the Sunday contract was, therefore there was no error in refusal to submit the request.

We shall consider the errors assigned on refusal to submit requests 2, 3, 4, and 5 together. If requests Nos. 2 and 3 were not proper to be submitted, Nos. 4 and 5 become immaterial, and it was not error to refuse to submit them. These requests are based upon the assumption that there was evidence of estoppel.

The contention of appellant under this head is that the evidence shows that the plaintiffs were bound by the estimates made by the engineers, and were also bound by the provisions of the Sunday contract respecting classification because remade by execution. We have seen that no new contract was made; that all the acts of the parties under the Sunday contract were done by way of ratification of the Sunday contract, therefore did not validate it. The plaintiffs, therefore, were not bound by any of the provisions of the Sunday contract; there was no agreement that plaintiffs should do the work or any part of it according to the terms of the Sunday contract, nor can the acts and doings of the plaintiffs in the execution of the work amount to an estoppel. The evidence does not show that the monthly estimates were final or intended to be. They were subject to correction on final adjustment. They were designated as "estimates" and were in fact so understood by the parties. The idea was to pay monthly about ninety per cent. upon the work performed, and at the conclusion of the job the balance due was to be ascertained and adjusted. Moreover, it appears from the evidence that plaintiffs were constantly insisting to defendant that they were entitled to rock classification for the hard material, which was put in the estimates as earth under the classification specified in the Sunday contract.

The receipts and vouchers given on the estimates and payments made were given and taken and the money paid and re-

ceived on the hypothesis that the Sunday contract was in force and the basis of such acts. As said by the learned trial judge in his opinion, "To hold that these receipts and the acts of the parties operate as a settlement would be nothing more or less than to enforce the Sunday contract."

It is clear that some of the essential elements of estoppel are wanting under the undisputed evidence in the case. The defendant was not misled to its prejudice by the acts of the plaintiffs. It knew that the plaintiffs were at all times insisting upon a different classification and that the monthly payments were not received as settlements, but were subject to revision and adjustment on final settlement. The defendant, relying on the conduct of the plaintiffs, had no right to act or refrain from acting to its injury by reason of any conduct or action on the part of plaintiffs.

Some claim is made by counsel for appellant to the effect that defendant settled with Winston Brothers Company, principal contractor, in reliance upon the acceptance by plaintiffs of the monthly estimate statements. There is no merit in this contention. The plaintiffs were not concerned with the defendant's contract with Winston Brothers Company. Doubtless the defendant made the settlement with Winston Brothers Company which it was legally bound to make under its contract with that company, and furthermore the defendant did not settle with Winston Brothers Company until after this action was commenced. The defendant had full knowledge of the claim of the plaintiffs before it settled with Winston Brothers Company, therefore it could not be misled to its prejudice by reason of any act of the plaintiffs. On any theory there is no basis for estoppel in the case. The acts of the parties, as we have seen, did not create a new contract on the terms of the Sunday contract. They were merely acts in ratification of a Sunday contract and were of no effect for that purpose. And the terms of a Sunday contract cannot be given life upon the principles of estoppel any more than upon

the principles of ratification.  *Vinz v. Beatty,* 61 Wis. 645, 21 N. W. 787; *Black v. Dressell's Heirs,* 20 Kan. 153; *Reed v. Johnson,* 27 Wash. 42, 67 Pac. 381, 57 L. R. A. 404; *Robison v. Wolf,* 27 Ind. App. 683, 62 N. E. 74; *Brown v. First Nat. Bank,* 137 Ind. 655, 37 N. E. 158, 24 L. R. A. 206.

There are other reasons which might be urged why there is no estoppel binding upon plaintiffs, but we need not discuss them, since sufficient has already been said upon the subject to show that the claim of estoppel is not well founded.

It is also insisted by counsel for appellant that there was an accord and satisfaction.  This contention is based upon the idea that the monthly statements and payments made under them and receipts given operated as an accord and satisfaction.  Assuming that the issue of settlement or accord and satisfaction was in the case, the submission of no question on the issue was requested by defendant and the issue must, therefore, under the statute, be deemed to have been found by the court against the defendant, since there is ample evidence to support such finding.

It is insisted that the court erred in refusing to answer question No. 2 in the verdict, $107,728.10.  This contention is made upon the theory that this was the amount due under the contract as created by the conduct of the parties irrespective of the Sunday contract, which defendant claimed had been adopted and remade on secular days.  The defendant tendered judgment for $19,382.10, claiming that this was the amount due after deducting payments made, on the basis that the whole value of the work under the contract was $107,728.10.

It is unnecessary to reargue this proposition.  What is said by counsel under this head has been sufficiently answered by what has heretofore been said in this opinion.  The jury found that the plaintiffs were entitled to recover $130,000, this being found to be the reasonable value of the services performed.  It may be observed in this connection that had the

case been tried on the defendant's theory the judgment recovered would in all probability have been practically the same. The main contention on amount of recovery was as to classification of 50,000 yards of material in cut number 1, the plaintiffs claiming it should have been classed as hard material, rock, or its equivalent, worth seventy cents per yard to remove, and the defendant claiming it earth and worth only twenty-seven cents per yard to remove. The defendant's tender of judgment was made on the basis of this 50,000 yards being earth, and if hard material, as claimed by plaintiffs, $21,500 more should have been tendered on this item alone, which would bring the recovery near what plaintiffs claim and what the jury allowed.

Error is assigned because the court refused to set aside the answer of the jury to the first question of the special verdict. There is ample evidence to support the answer to this question. Under the rule of this court, if there is any credible evidence to support the verdict it cannot be disturbed. It is claimed by counsel for respondents that in any event the finding was immaterial and that it was not necessary to submit the question to the jury. We do not pass upon that point, since the finding is supported by the evidence.

Complaint is also made because of amendment of pleadings and trial of the case before the jury impaneled to try the case on the original pleadings. This situation was contributed to, if not caused, by the appellant. The plaintiffs sued on the Sunday contract; made their complaint accordingly and proceeded to trial, and after the trial had progressed for about eight days and the plaintiffs had closed their evidence the defendant conceived the idea of then springing the Sunday contract question. While the plaintiffs were making their case the defendant exhibited no signs of any intention to raise the Sunday contract question, and the plaintiffs had a right to believe that it would not be raised. Counsel for defendant knew several days before the trial began that the contract

was made on Sunday. Under such circumstances it would seem the court properly exercised its discretion in ordering the action to proceed before the same jury, at least unless justice otherwise demanded. Practically all the facts were alleged by the pleadings upon which the case proceeded to trial. There was nothing set up by the amendment which could have surprised the defendant. Moreover, .ample time was given the defendant to plead and prepare for trial, the case having been held open for the accommodation of the parties for about two weeks. Nor do we perceive any objection to trying the case before the jury impaneled to try it under the original issues.

Counsel for defendant argues that the course which the trial took, up to the point of raising the question of Sunday contract by defendant, and subsequent change to action on *quantum meruit,* was well calculated to prejudice the jury. We do not think any prejudicial error was committed by the action of the court in this regard.

It is said terms should have been imposed, upon allowing plaintiffs to amend, which was not done. Whether terms should have been imposed under the circumstances rested in the sound discretion of the trial court and we do not think the discretion was abused. *Thomas v. Hatch,* 53 Wis. 296, 10 N. W. 393; *Sherry v. Madler,* 123 Wis. 621, 101 N. W. 1095; *Pearson v. Kelly,* 122 Wis. 660, 100 N. W. 1064; *Ainsworth v. Williams,* 111 Wis. 17, 86 N. W. 551; *Ill. S. Co. v. Budzisz,* 106 Wis. 499, 82 N. W. 534.

Some other errors are assigned, all of which have been carefully examined, but we do not regard them of sufficient gravity to require treatment. We desire to say in closing that we have been favored by the learned trial judge with an able and exhaustive opinion on the material questions in the case which has been very helpful in our investigation.

We find no prejudicial error in the record.

*By the Court.*—The judgment is affirmed.

MARSHALL, J.    The parties to this litigation dealt with each other, from the beginning to the end of plaintiffs' work, upon the theory that it was commenced and prosecuted under contract in harmony with the estimates made by the engineer from time to time, so far as they conformed to the verbal arrangement embodied in the Sunday contract. Their minds thus met day after day, week after week, and month after month, as the work progressed, covering a period of more than a year and a half. Their whole manner of dealing shows, conclusively, that they had, in general, a mutual understanding as to their contractual relations. No question was raised other than such as might have arisen under the writing had it been valid, until after issue joined in this action. Under such circumstances, to allow either side to repudiate the situation created by their mutual conduct, and efficiently insist that there was no contract because of the circumstance that, through their mutual negligence, the writing was made on Sunday, and to hold that there is an arbitrary rule of public policy, admitting of no exception, permitting or requiring the court to sanction such unconscionable conduct, seems to me to be a very serious reflection upon the state of the law. There is little wonder laymen are sometimes heard to remark that justice is one thing and law is another. That is a misconception though not entirely without basis. It is within the competency of the courts to remove all ground therefor. It is believed that there is very little reason for such thought in the jurisprudence of this state. The court itself has proceeded far in doing the rescue work. It can complete it without much if any legislative assistance or violating any valuable principle.

Why shut our eyes to the plain story which the acts of the parties tell us? Such work as was done, universally, is performed under contract. Common knowledge and common sense tells us that the work would not have been performed upon the one side or permitted upon the other without a con-

tractual understanding. What that understanding was is plain from the conduct of the parties. Had the writing been delivered on the day after it was executed, no question would exist as to what the contract was. Why, from a common-sense standpoint, should such a circumstance have more dignity than the conduct of the parties for over eighteen months of continuous operations in adopting the terms of the invalid agreement? Where is the principle or authority which tells us that parties cannot make a contract by conduct unmistakably proclaiming their mutual understanding? None is referred to by counsel or court as I read, while there is ample authority that the acts of the parties, as in this case, will make a binding contract. 27 Am. & Eng. Ency. of Law (2d ed.) 407; *Adams v. Gay,* 19 Vt. 358; *Day v. McAllister,* 15 Gray (81 Mass.) 433; *Miles v. Janvrin,* 200 Mass. 514, 86 N. E. 785; *Cook v. Forker,* 193 Pa. St. 461, 44 Atl. 560.

There are many of such authorities as those referred to. Some put the result upon the ground of ratification, which is perhaps illogical. In general, the basic reason is competency to adopt, and actual adoption, expressly or by conduct, on a secular day, of a Sunday writing. That is in harmony with the decisions of this court. *Melchoir v. McCarty,* 31 Wis. 252; *Troewert v. Decker,* 51 Wis. 46, 8 N. W. 26. The logic of those cases is that the unqualified affirmation on a secular day does not ratify and make good the Sunday contract, but makes a new one. That rule is recognized in *Ainsworth v. Williams,* 111 Wis. 17, 86 N. W. 551. It does not militate at all against the doctrine that a Sunday contract is void and that a recovery cannot be had where the plaintiff's cause of action has to be traced through such an agreement or cannot be established without proving it. Here the acts of the parties proclaim, clearly, what their mutual understanding was. They show an unequivocal adoption of the Sunday writing,—in practical effect, a contract independent of such writing,—so that no reference need, necessarily, be made thereto at all.

The writing may be of use as explanatory of the conduct, but the latter is· the substantial thing.

The mere form of the action here is of little consequence, since all the transactions between the parties were ·fully brought to the attention of the court by the evidence and passed upon. Much time and energy seems to have been spent over mere matters of form. The facts constituting the plaintiff's cause of action and the evidence are the only really essential things.

Whether the view I take of the case, if worked out in detail, would make any difference in the result is not clear. I understand the attitude of counsel on the oral argument was that the gist of the matter would still be as to whether the large amount of material classified by defendant as earth should be treated as rock and whether the estimates made by the engineer were conclusive as to the actual amounts and kinds of material moved. On those matters, I incline to the view that, had the trial court disposed of the case as one on contract, in harmony with the acts of the parties, the dispute as to kinds and quantity of material would have been settled, and properly so, as they were. Whether the finality would have been substantially the same, it would do no good for me to personally determine.

A motion for a rehearing was denied, with $25 costs, on October 6, 1914.