Charles R. PERRY, Ronald G. Allen, Victor R. Anderson, Joel G. Andraski, Terry A. Austuto, Alan J. Borgealt, Joe Buckstead, Sandra Christenson, Paul J. Cieslak, Charles F. Davis, Mary L. Fair, Sharon R. Grant, Delphine Gurzynski, David A. Gustafson, Janice Ellen Jackson, Robert L. Kaiser, Terry Mehail, Stanley J. Pauli, Gary Peterson, Bette Sass, Marilyn J. Schwister, James P. Sokol and Robert Sullivan, Plaintiffs-Respondents,

v.

MILWAUKEE BOARD OF SCHOOL DIRECTORS and Milwaukee Public School Administrators and Supervisors Council, Inc., Defendants-Appellants.

Court of Appeals

*No. 85–1645. Submitted on briefs March 4, 1986.—Decided April 1, 1986.*
(Also reported in 388 N.W.2d 638.)

For the plaintiffs-respondents the cause was submitted on the briefs of *Davis & Kuelthau* by *David J. Vergeront,* of Milwaukee and *David T. Bryant,* of Springfield, Virginia.

For the defendants-appellants the cause was submitted on the briefs of *Rausch, Hamell, Ehrle & Sturm, S.C.,* by *John A. Hamell, Jr.,* of Milwaukee.

Before Moser, P.J., Wedemeyer and Sullivan, JJ.

WEDEMEYER, J. The Milwaukee Public School Administrators and Supervisors Council, Inc. (ASC) appeals from a summary judgment granted to twenty-three administrative and supervisory personnel who do not belong to the ASC (nonunion supervisors). The trial court concluded that the fair-share agreement negotiated by the ASC and the Milwaukee Board of School Directors (School Board) was contrary to statute and that payroll deductions totaling more than $23,000 must be returned to the nonunion supervisors. Because school supervisors are not municipal employees within the meaning of sec. 111.70, Stats., we affirm.

The factual setting for this case is as follows. The ASC is the collective bargaining agent for administrators and supervisors employed by the School Board. The nonunion supervisors belong to the collective bargaining unit but are not members of the ASC. In 1980, the ASC and the School Board agreed upon a three-year contract which provided, *inter alia,* that ASC dues would be deducted from employee paychecks in the following manner:

1. DUES DEDUCTION. The Board will withhold dues due the ASC upon presentation of a signed order by the individual employe . . . .

2. FAIR SHARE. All employes represented by the Administrators and Supervisors Council who have completed sixty (60) calendar days of service and are not members of the ASC shall be required, *as a condition of employment,* to pay to the ASC a pro-

portionate share of the cost of the collective bargaining process and contract administration. Such charge shall be deducted from the employe's paycheck in the same manner as ASC dues . . . . [Emphasis added.]

On July 1, 1980, this contract took effect and fair-share deductions commenced. The nonunion supervisors subsequently brought suit for injunctive relief and return of monies collected pursuant to the fair-share clause of the contract. After several procedural delays, the trial court granted summary judgment to the nonunion supervisors.

In its memorandum decision, the trial court focused on the following definitions in the Municipal Employment Relations Act (MERA), sec. 111.70(1), Stats:

(f) "Fair-share agreement" means an agreement between a municipal employer and a *labor organization* . . . .

. . . .

(h) *"Labor organization" means* any [municipal] employe organization in which [*municipal*] *employes* participate and which exists for the purpose, in whole or in part, of engaging in collective bargaining with municipal employers concerning grievances, labor disputes, wages, hours or conditions of employment.

(i) *"Municipal employe" means any individual* employed by a municipal employer *other than* an independent contractor, *supervisor,* or confidential, managerial or executive employe. [Emphasis added.]

The trial court concluded that "since the plaintiffs are supervisors . . . they cannot be municipal employees

or members of a labor organization. Therefore, the plaintiffs would not be subject to MERA . . . fair-share agreements."

On appeal, ASC argues that summary judgment was inappropriate because ASC raised unresolved factual issues in its affirmative defenses of estoppel, waiver and ratification. ASC further argues that the fair-share agreement is valid because it does not violate public policy and because it is not a "prohibited practice" under sec. 111.70(3)(a), Stats. We will address these assertions *seriatim*.

■

The granting of summary judgment is a question of law which we review *ab initio. Waters v. United States Fidelity & Guaranty Co.,* 124 Wis. 2d 275, 278, 369 N.W.2d 755, 757 (Ct.App. 1985). Upon review of a summary judgment, this court applies the standards set forth in sec. 802.08(2), Stats., in the same manner as the trial court. *Id.* Section 802.08(2) provides that summary judgment is appropriate if the parties' pleadings and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will reverse only if the trial court incorrectly decided a legal issue or if material facts are in dispute. *Arnold v. Shawano County Agricultural Society,* 111 Wis. 2d 203, 209, 330 N.W.2d 773, 776 (1983).

■

Having reviewed the record, we find no issue of material fact underlying ASC's affirmative defenses. It is undoubtedly true that many, if not all, of the nonunion supervisors received promotions and/or pay raises during the time the fair-share agreement was in effect, but this is irrelevant. As our supreme court stated in

*Grams v. Melrose-Mindoro Joint School District No. 1,*
78 Wis. 2d 569, 578, 254 N.W.2d 730, 735 (1977) (citations omitted): "When the legislative will is expressed in peremptory terms of a statute it is paramount and absolute and cannot be varied or waived by the private conventions of the parties. It follows that the legal effects and consequences of the statutory limitation cannot be avoided by estoppel." Thus, the nonunion supervisors could not waive MERA or be estopped from claiming that the fair-share agreement violated this statute.

As for ratification, we are hard pressed to discern how the nonunion supervisors could ratify an agreement they did not make and did not vote for. Certainly, the fact that they paid their "fair share" pursuant to the contract cannot be construed as ratification because the fair-share deduction was made a "condition of employment." The question before the trial court was not one of material fact, but one of statutory interpretation: was the fair share agreement contrary to law and therefore void? Generally, a contract made in violation of a statute is void. *See Waskey v. Hammer,* 223 U.S. 85, 94 (1912). A void contract cannot be ratified. *See Gist v. Johnson-Carey Co.,* 158 Wis. 188, 194, 147 N.W. 1079, 1081 (1914). Because no genuine issue of material fact confronted the trial court as to any of ASC's affirmative defenses, summary judgment was appropriate.

We now turn to the trial court's holding that the fair-share agreement between ASC and the School Board did not come within the purview of sec. 111.70, Stats. Because statutory interpretation involves a question of law, we need not defer to the trial court. *DILHR v. Coatings, Inc.,* 126 Wis. 2d 338, 343, 376

N.W.2d 834, 837 (1985). As related above, the trial court cited three MERA definitions, *see* subsecs. 111.70(1)(f), (h) and (i), Stats., to support its conclusion that supervisors are not municipal employees subject to fair-share agreements. This succinct analysis implicitly followed the "plain meaning" rule that "[w]ords of a statute must be given their obvious and ordinary meaning and courts are not to resort to the judicial rules governing construction in the absence of an ambiguity." *County of Milwaukee v. LIRC,* 113 Wis. 2d 199, 203, 335 N.W.2d 412, 415 (Ct.App. 1983) (footnote omitted).

■ ASC asserts that the trial court erred by ignoring a MERA provision that appears to sanction fair-share deductions from supervisors' paychecks. Section 111.70(3), Stats., provides in part:

> (a) *It is a prohibited practice for a municipal employer . . . .*
>
> . . . .
>
> 6. *To deduct labor organization dues from* an employe's or *supervisor's earnings,* unless the municipal employer has been presented with an individual order therefor, signed by the municipal employe personally . . . , *except where there is a fair-share agreement in effect.* [Emphasis added.]

ASC argues that this subsection allows fair-share deductions from supervisors' paychecks. We agree, but note that sec. 111.70(8), Stats., clearly delineates which supervisors come under the purview of MERA. This section permits law enforcement and firefighting supervisors to organize and negotiate with their municipal employers, and also specifically provides that law

enforcement supervisors in cities of the first class are municipal employees for the purposes of sec. 111.70. No reference is made to school supervisors. We therefore conclude that the supervisors mentioned in sec. 111.70(3)(a)6 do not include school supervisors.

ASC's final argument is that even if MERA does not authorize fair-share agreements affecting supervisors, these agreements are still valid because they are not contrary to public policy. This assertion misconstrues the relevant case law. In *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), the United States Supreme Court considered a constitutional challenge to an agency shop agreement between a school board and a teachers' union. The agreement, explicitly authorized by Michigan statutes, mandated that every member of the bargaining unit, as a condition of employment, pay a "service fee" equal in amount to union dues. *Id.* at 211. The *Abood* Court framed the constitutional issue thusly:

> To compel employees financially to support their collective-bargaining representative has an impact upon their First Amendment interests. . . . To be required to help finance the union as a collective-bargaining agent might well be thought . . . to interfere in some way with an employee's freedom to associate for the advancement of ideas, or to refrain from doing so, as he sees fit. . . . *[S]uch interference . . . is constitutionally justified by the legislative assessment* of the important contribution of the union shop to the system of labor relations . . . .

*Id.* at 222 (emphasis added; footnote and citations omitted). The Court identified two governmental interests advanced by the agency shop provision of the Michigan

statute: maintaining labor peace and eliminating the risk of "free riders." *Id.* at 224. The *Abood* Court then concluded that it was not the judiciary's role "to judge the wisdom of Michigan's decision to authorize the agency shop in public employment." *Id.* at 224–25 (footnote omitted). In essence, the *Abood* Court held that a public sector fair-share agreement was constitutionally permissible if authorized by statute.

Our legislature, in its wisdom, chose to exclude school supervisors from the purview of MERA. It is not our province to second-guess this legislative limitation, and ASC cites no case law from any jurisdiction wherein a court even considered, much less ratified, a statutorily-*implied* agency shop agreement in the public sector.

Because MERA does not cover school supervisors, because a labor contract provision that violates a statute is void as a matter of law, *WERC v. Teamsters Local No. 563,* 75 Wis. 2d 602, 612, 250 N.W.2d 696, 701 (1977), and because it is uncontroverted that no individual wage assignments were authorized, *see* sec. 241.09, Stats., we affirm the trial court's judgment mandating the return of fair-share deductions to the nonunion supervisors.

*By the Court.*—Judgment affirmed.