R. M. TOWNSEND, Appellee, v. ROSALIND WOODWORTH, Appellee, et al., Appellants.

REFORMATION OF INSTRUMENTS: Mutual Mistake. A mutual
1    mistake in the execution of a deed, by which less land is conveyed than is called for by the contract, demands reformation as between the parties to the deed.

HOMESTEAD: Failure of Wife to Join in Sale Contract—Estoppel.
2    A wife who *does not sign the husband's contract for the sale of the homestead,* but intentionally furthers the sale by correctly pointing out the boundaries, in accordance with said contract, and then abandons all homestead interest in the property, and, when the consideration is paid, joins with her husband in a deed, is estopped to prevent such reformation of the deed as will cause it to speak the mutual intention of all the parties.

ESTOPPEL: Sale of Homestead—Inconsistent Conduct of Wife. The
3    conduct of a wife who has not joined in her husband's contract for

the sale of the homestead may work an estoppel which will be equal to a statutory conveyance by her.

*Appeal from Floyd District Court.—J. J.* CLARK, *Judge.*

DECEMBER 14, 1918.

ACTION to reform a deed, and to quiet title in the plaintiff. Opinion states the facts. Decree for the plaintiff in the court below. Defendant appeals.—*Affirmed.*

*F. & F. M. Lingenfelder,* for appellants.

*H. J. Fitzgerald, J. C. Campbell,* and *J. H. Lloyd,* for appellees.

GAYNOR, J.—This action is brought in equity, to reform a certain deed executed by the defendants Krueger and wife to the plaintiff, and to have the title to the premises quieted in him against any claim made by them and against any claim made by

1. REFORMATION OF INSTRUMENTS: mutual mistake.

the other defendant, Rosalind Woodworth. Prior to the happening of the matters out of which this controversy grows, Fred C. Krueger was the owner of two lots, known as 6 and 7. These lots were occupied as a homestead by the Kruegers. Measured as one body, they were 124 feet and 6 inches east and west, and 132 feet north and south. For the purposes of this opinion, the lots will be described as running due east and west. The whole property is bounded on the south by Hulin Street, and on the west by Milwaukee Street. A two-story building, 38 feet wide by 60 feet long, situated on the west end of these lots and facing south on Hulin Street, was occupied by the Kruegers as a home. There is a porch on the south side, facing Hulin Street, and a bay window on the east. A wide cement walk extends from Hulin Street to the front porch, a distance of 20 feet. A narrow cement walk, about 2 or 2½ feet wide, leads from this wide walk

around the east side of the house, past a bay window, to the kitchen and woodshed, on the north.

The controversy in this case arises over a strip, approximately 4 feet, running along the east side of this house.

On the 27th day of October, 1910, Fred C. Krueger entered into a written contract with the plaintiff, by which he sold and agreed to convey to the plaintiff the west 66 feet of these lots; and on the 2d of January, Krueger and wife executed and delivered to the plaintiff a deed describing only the west half of these two lots, or the west 62 feet and 3 inches. After the execution of this contract, and before the deed was made, Krueger and wife moved out of the building and off the premises, and surrendered the same to the plaintiff. On the 5th of January, 1912, the Kruegers conveyed the east half of these two lots to the defendant Rosalind Woodworth. This action is brought, not only to reform the deed given by Krueger to the plaintiff, and to make it conform to the contract which preceded the execution of the deed, but also to quiet title in the west 66 feet against the Kruegers, and against any claim asserted by Rosalind Woodworth under her deed.

It will be noticed that these lots, east and west, were 124 feet and 6 inches long, and each lot, 66 feet wide. The west 66 feet were given to the plaintiff in the contract, leaving 58 feet and 6 inches on the east half of the two lots. The Kruegers undertook, however, to convey to Rosalind Woodworth the east half. The east half would be 62 feet and 3 inches, which would cover about 3 feet and 9 inches of the land covered by the contract made between the Kruegers and the plaintiff; and this is the strip over which the controversy arises.

On the hearing below, the court found for the plaintiff, and that he was entitled to have his title quieted in this west 66 feet of the two lots, and reformed the deed to correspond with the contract made between Krueger and the plaintiff.

This, of course, had the effect of giving Mrs. Woodworth 3 feet and 9 inches less than she was entitled to under her deed from the Kruegers, and to compensate her for this, the court found that she was damaged in the sum of $250. The Kruegers alone appeal.

It will be noted that the original contract·for the west 66 feet of these lots was not signed by the plaintiff's wife. The contract was dated on the 27th day of October, 1910, and provides:

"That the party of the first part [F. C. Krueger] hereby agrees to sell to the party of the second part [plaintiff], on the performance of the agreements, hereinafter stated, a fee simple title clear of all liens and incumbrances whatever by good and sufficient warranty deed."

On the day of the execution of the contract, plaintiff paid Krueger $100, and agreed to pay $4,000 in two payments, $2,000 on November 1, 1910, and $2,000 on January 2, 1911, the deed and abstract to be given on that date, and the abstract to show perfect title.

On the 2d day of January, all the conditions precedent to plaintiff's right to the deed were performed by the plaintiff, and on that day, the deed was executed by the Kruegers and delivered to him. The deed was immediately recorded. The deed, however, instead of providing for·the west 66 feet of the two lots, covered only the west half of the two lots. Krueger and wife lived in the house on the premises for about 30 days after the contract was made. Then they vacated, and delivered the key of the house to plaintiff. Plaintiff did not move in with his family until in February, although he took possession as soon as the Kruegers moved out, and did some painting and papering and repairing.

As between Krueger and the plaintiff,—assuming that there are no intervening rights,—there can be no question as to the duty of the court to reform the deed to make it correspond with the contract. The contract provides for the

west 66 feet of these two lots. Both parties supposed, at
the time, that plaintiff was getting the west 66 feet of these
lots. At the time the deed was made, Krueger supposed that
the *west half* was the same as the *west 66 feet,* and when
he made the deed, it was with the understanding that the
deed conformed to the requirements of the contract. He
said he knew it was not worded the same; but there is no
question that he intended to convey to the plaintiff the land
described in his contract—the west 66 feet. The mistake
of Krueger was in thinking that the west half of these two
lots covered the same territory as described in his contract.
The plaintiff did not examine the deed, and understood that
it covered the land described in his contract. There is no
question that the plaintiff supposed, when he took the deed,
that it gave him the west 66 feet, and there is no question
that Krueger, too, supposed he was conveying the west 66
feet. The walk around the house was so laid that it could
be used only in connection with the house. It was laid on
and over this disputed strip, and was used only in connec-
tion with the dwelling. There were steps leading from the
walk to the porch on the east side of the house. The walk
ran around to the kitchen, woodshed, and well. There was
no property situated on the east half, with which this walk
had any connection, nor were there any buildings to which
it led. After plaintiff discovered that the description in
the deed did not conform to the contract, he notified Krue-
ger, and Krueger promised to rectify it. This conduct of
Krueger's emphasizes the fact that he, too, believed that the
deed, as prepared and delivered to the plaintiff, covered the
same territory described in his contract. Every fact in
this record shows that there was a mistake made—we may
assume, an honest mistake—in preparing the deed; that the
intention of Krueger was to convey the same ground de-
scribed in his contract, and that the thought of the plaintiff,
in receiving the deed, was that it covered the same ground

described in the contract. The consideration agreed to be paid, and paid, was for the land described in the contract When the contract was made and the purchase agreed upon, both had in mind the west 66 feet.

It is claimed, however, that, as to Mrs. Krueger, the reformation cannot be sustained. It will be noted that she did not join in the contract to convey the 66 feet. She joined only in the deed, conveying the west half of the two lots. She did, not in the same joint instrument, convey to the plaintiff the land in dispute. It is claimed that the property was her homestead; that she and Krueger occupied it as a home, at the time this deed was made; that, therefore, not having joined in an instrument to convey more than the deed purported to convey, she cannot be held bound by the contract, or by any representations or statements made by her husband prior to the execution of the deed.

2. HOMESTEAD: failure of wife to join in sale contract; estoppel.

It is true that this was her homestead; that she and Krueger occupied the property at the time as a home. The title, however, was in Krueger. Her rights in the property were only such as came to her through the homestead law— the right of possession. It is true that, under our statute, no conveyance of the homestead, if the owner is married, is valid, unless the husband and wife join in the execution of the same joint instrument, whether the homestead is exclusively the subject of the contract or not. Section 2974, Code, 1897.

It does not appear definitely from the record, but we may assume that both lots were occupied by the Kruegers as a homestead at the time this contract was executed. The right of homestead remains as long as the property is used and occupied as a home. When it is deliberately abandoned as a home by the party who claims the homestead right, it no longer has protection under the homestead law; or,

in other words, the party in whom the right of homestead vests, may abandon that right by abandoning possession. Before the commencement of this action, Mrs. Krueger had joined with her husband in the conveyance of both lots. She no longer occupied or had possessory right of homestead in any of the land. She did not have a homestead right in either the east or the west half, at the time she conveyed the east half to Mrs. Woodworth. Soon after the making of this contract, Mrs. Krueger and her husband abandoned the entire property, and ceased thereafter to have or claim any homestead interest in any of the property. If it should be held, as a matter of fact, that this strip in dispute was part of the homestead, and was used in connection with and as a part of the homestead at the time the contract was made, it is evident that, before the deed was made, she had abandoned the homestead, and at that time, she had no homestead in any part of the tract. She had abandoned any right to claim a homestead even in this strip, when she made her deed. It is apparent that Mrs. Krueger, in those two deeds, the one to the plaintiff and the one to Mrs. Woodworth, conveyed all her right in the property, including this strip. If we should hold that she did not part with this strip to the plaintiff, then she did part with it when she made her deed to the other defendant. The home occupied was on the west half of these lots. Although there is some dispute in the evidence, we are satisfied that, before plaintiff purchased, Mrs. Krueger pointed out the east line of the land which she claimed to constitute the homestead, and that that included this strip in controversy. We are satisfied, further, from the whole record, that she knew, at the time that plaintiff purchased, that he was purchasing this strip in controversy; that she knew it was the purpose and intent of her husband to give him this strip in controversy. It had always been used by them in connection with the home. The sidewalk was placed there for

use in connection with the home. It served no useful pur
pose except in connection with the home. It was the hom:
place that plaintiff was buying. There is no doubt that Mrs.
Krueger understood, when she joined in the deed, that she
was conveying the home place, and this strip in controversy,
as a part thereof. In fact, everyone connected with the
deal seems to have considered that the strip in controversy
was included in the home place. The same mistake, we have
no doubt, that led to the description in plaintiff's deed, was
involved in the description in Mrs. Woodworth's deed. It
was supposed that the 66 feet gave an equal portion to each.
They had overlooked the fact that the lots were 132 feet
north and south, and not 132 feet east and west. Mrs.
Woodworth never discovered that this strip was included in
her deed until after she had made her purchase, and found
that the east half of these lots purchased by her carried her
west line over this disputed strip.

What is the situation of Mrs. Krueger in this suit?
She had parted with whatever homestead right she had in
the land, either to the plaintiff or to Mrs. Woodworth. She
is bound by no covenant or warranty to Mrs.
3. ESTOPPEL: sale  Woodworth that she is bound to defend. If
of homestead:
inconsistent con-  she prevail, the profitable results of her de-
duct of wife.
fense must go to Mrs. Woodworth. She can
neither gain nor lose in this suit. The only question is
whether this disputed strip shall go to the plaintiff or to
Mrs. Woodworth. If it goes to the plaintiff, the defendant
Fred C. Krueger is alone liable to her for any deficiency in
the land conveyed to her. The reformation of the deed in no
way affects Mrs. Krueger, or any rights that she has in the
premises. Mrs. Woodworth has not appealed, and is not
complaining of what she has lost in the land by the decree
of the court. Krueger has no ground for complaining, for
the reason that he contracted with the plaintiff to convey
to him just what the plaintiff is now claiming. When he

made the deed, it was in the full belief that he was convey-
ing to plaintiff the land covered by the contract.  When he
received the consideration, he knew that plaintiff was pay-
ing him for the land described in the contract.  The evi-
dence tends clearly to show that, if the plaintiff received no
more land than is covered by his deed, he will be seriously
handicapped in the comfortable occupation of the home
supposed to be covered by his contract, and he may have
to make expensive changes, in the way of removing the bay
window, in order to have access to the rear end of his lot
over a walk.  The only ground on which Mrs. Krueger can
contend for what she is now contending for is that, techni-
cally, under the statute, the deed which was signed by her
did not cover this strip of land, and that she is not bound
by the action of her husband, because of the provisions of
Section 2974 of the Code of 1897.  We are of the opinion
that, when she pointed out the east boundary of this home
property, and in so doing included within its limits the
land in dispute, she is now estopped to claim that the plain-
tiff is not entitled to have the deed reformed so as to ex-
press the true intent of all the parties at the time the deal
was consummated.  See *Engholm v. Ekrem,* 18 N. D. 185
(119 N. W. 35, 38).  The homestead statute in Dakota, so
far as the matter in controversy here is concerned, is like
our own.  In that case, there was an oral contract of sale,
followed by possession.  It was contended that the sale was
void, because the property was a homestead, and that the
oral agreement was void, because in contravention of the
statute.  It was also contended that estoppel cannot be
made available to supply the place of the statutory convey-
ance;  that an estoppel cannot be predicated on the void
conveyance of a homestead.  The court said:

"It is, of course, manifestly true that the alleged oral
contract of sale was void under the statute of frauds, it not
being in writing.  It is equally true that, because of the

homestead character of the land, the written contract of Nels
O. Engholm [her husband], in the absence of his wife's sig-
nature, was a nullity. What, then, are the rights of the
parties under the facts aforesaid? Can the equitable doc-
trine of estoppel by conduct be invoked in respondent's be-
half? If, as appellants' counsel contend, this question must
be answered in the negative, then a wrong has been suffered
by respondent for which he may have no adequate reme-
dy. The appellants by their conduct induced respondent to
pay a portion of the purchase price, and to enter into pos-
session of the premises in good faith, and to make valuable
improvements. Upon the plainest principles of justice, re-
spondent should be held to be the equitable owner of the
premises, and appellants should not be permitted in a court
of equity to deny such ownership in him. Neither the stat-
ute of frauds nor the various statutory provisions enacted
for the protection of a homestead claimant can be held to
do away with the general equity doctrine of estoppel *in pais.*
While it is true some courts have held to the contrary, the
weight of modern authority is to the effect that the doctrine
of equitable estoppel will be applied to a married woman,
as well as to a *feme sole.* The doctrine is not invoked to
render valid a contract which is void under the statute of
frauds or under statutes for the benefit or protection of the
homestead claimants, but it is invoked to prevent the suc-
cessful perpetration of fraud by preventing wrongdoers from
urging the provisions of such statutes to shield them in their
tortious conduct. We are agreed that, under the facts as
disclosed by this record, the appellants should be, and are,
estopped from asserting title to the premises as against the
respondent."

See authorities cited in support.

In the instant case, it appears that the Kruegers in-
tended, in making the conveyance to plaintiff, to part with
their home and their homestead rights in the premises, and,

at the time, considered this disputed strip as a part of the home; that, soon after making the contract, and before the deed was made, they did abandon the premises and surrendered all homestead rights in the premises; that, at the time the deed was made, Mrs. Krueger had no homestead right in this property; that they had never occupied the east half of these two lots, as a home, separate and apart from her occupancy of this building on the west half; that, when they left, they surrendered all homestead rights in the property. It further appears that they abandoned the home in consideration of the plaintiff's promise to purchase, and in reliance upon his paying the consideration stipulated in the contract therefor. An estoppel can be invoked against a married woman, as well as against a single woman, whenever, by her conduct, she has led another to the doing of a thing which it would be inequitable afterwards to permit her to deny his right to do. Equity will not permit this statute, made for the protection of women in a home, to be invoked as a shield to perpetrate a fraud. These statutes were not enacted to encourage frauds and cheats. In this case, plaintiff paid the price agreed to be paid for the property, took possession, expended large sums of money in improvements: all of which, we think this record shows, was known to Mrs. Krueger. She is now estopped to deny that which she encouraged the plaintiff to believe to be a fact, and which she must have known he relied upon as a fact in consummating the deal, and in paying her husband the money called for by the contract.

We have not adverted to the matters discussed by Mrs. Woodworth in her brief, for the reason that she has not appealed from the judgment of the court, and we are not in a position to grant her any relief.

Upon the whole record, we think the judgment of the court was right, and it is—*Affirmed*.

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.