KRUEGER, Appellant, vs. GROTH and wife, Respondents.

*February 11—June 21, 1926.*

*Homestead: Oral contract to exchange homesteads: Exchange of possession: Rights of wife: Estoppel to assert dower: Specific performance of contract: Statute of frauds: Part performance.*

1. Although the homestead is for the benefit of the family, yet, as between the husband and the wife, he has the right of selection and the power of abandonment.  p. 392.
2. Evidence in an action for specific performance that, pursuant to an oral agreement, plaintiff and defendants exchanged homesteads, each surrendering the keys and the possession, and that defendants occupied plaintiff's homestead as their new homestead, is *held* to warrant the conclusion that defendants voluntarily abandoned their old homestead.  p. 392.
3. Under such circumstances each defendant is equitably estopped to assert a homestead exemption as a defense to the action for specific performance, notwithstanding the liberality of exemption under sec. 17, art. I, Const., and the statutes (Laws 1901, ch. 269, and secs. 237.02 and 272.22, Stats.), and the fact that there had been no written conveyance under sec. 235.01, since the abandonment destroyed the exemption, and one cannot have the benefit of two homesteads at the same time, in view of sec. 272.20.  p. 392.
4. In the application of the doctrine of estoppel to take title to land from one and vest it in another, equity is not limited to facts, situations, representations, or concealments as of the time of the original transaction, but may rest the estoppel upon subsequent conduct.  p. 397.
5. Under the agreement of exchange, the wife is equitably estopped, in the action for specific performance, to assert her

inchoate right of dower under sec. 233.01, Stats., as a defense in the specific performance action, notwithstanding it had not been barred.  p. 398.

6.  Although prior to the date that possession was exchanged the agreement between the parties could not have been enforced because it was oral, yet after the exchange of possession and the acts by the respective parties in reliance thereon and in accordance with the contract there was such possession and part performance as would take the oral contract out of the provisions of the statute of frauds.  p. 398.

OWEN, ROSENBERRY, and DOERFLER, JJ., dissent.

APPEAL from a judgment of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge.  *Reversed.*

In this action to compel specific performance the following facts were found by the court or appear undisputed in the record:

After some preliminary negotiations the plaintiff, then owner of a farm of 160 acres (120 acres in one piece and a 40-acre wood-lot) near Stiles, worth about $15,000, subject to $8,000 in incumbrances, orally agreed with the defendant *Gust Groth,* then owning a farm of about 120 acres and claiming to own a wood-lot of 29 acres (title to this lot being found to be in some one else and claim to it being waived) near Oconto Falls, subject to incumbrances of about $3,000 and worth about $6,000, to exchange said farms subject to incumbrances, each to pay the taxes then outstanding against his property and defendant to pay plaintiff $2,500 in addition.

Immediately, and in anticipation of such exchange, the two parties arranged an auction sale of plaintiff's personal property then on his said farm, together with a certain amount of defendant's personal property, to be had December 1st at plaintiff's farm, such sale resulting in the disposal of plaintiff's personal property at a substantial amount less than its reasonable value and considerable expense to him.  Prior to said sale plaintiff and defendant *Gust Groth* endeavored to negotiate a loan to enable said defendant to

make the payment of $2,500, but, such negotiations being unsuccessful, on or about November 24th it was agreed that the cash payment was to be reduced to $2,250.

On December 6th both plaintiff and defendants with their respective families, who had theretofore been occupying as homesteads their respective farms, completely exchanged possession of such farms and each family established the new farm as its homestead. *Mrs. Groth* gave the keys of defendants' former homestead to plaintiff and received the keys of the other premises. Plaintiff expended some $20 in labor on the Oconto Falls farm in the spring. Defendants occupied such new homestead until about March 1, 1925, and received certain personal property of plaintiff's.

December 21, 1924, the house on defendants' former farm then occupied by plaintiff was burned, the $2,500 insurance thereon not being paid until after March 1, 1925, $2,000 being payable to the mortgagee.

The trial court expressly found that defendant *Ida Groth* had full knowledge of all the circumstances and that her statements and conduct were at all times such as induced the plaintiff to rely on such and perform the contract of exchange; and that she expressed the details of and her satisfaction with the exchange to witnesses.

March 1, 1925, defendants refused to carry out said agreement. This action was commenced March 10, 1925, defendants then first asserting their defenses hereinafter stated.

As conclusions of law the court found that, inasmuch as defendant *Ida Groth* did not join in writing, the agreement to convey the *Groth* homestead was void, could not be enforced or made the basis of an action for damages, and directed judgment dismissing the plaintiff's cause of action. From such judgment plaintiff has appealed.

For the appellant there was a brief by *Classon, Whit-*

*comb & Kuzenski* of Oconto, and oral argument by *Walter F. Kuzenski.*

For the respondents there was a brief by *Martin, Martin, Martin, Clifford & McHale* of Green Bay, and oral argument by *John M. McHale.*

ESCHWEILER, J.    The defendant husband asserted, as against plaintiff's demand for specific performance of the alleged oral agreement for interchange of their respective farms, that there was no completed agreement; that there was no writing or memoranda thereof in accordance with sec. 240.08 (formerly sec. 2304), Stats.; that the real estate was the homestead and not conveyed by the husband and wife in accordance with sec. 235.01 (formerly sec. 2203); the defendant wife asserted the same grounds and also that she had an inchoate dower interest which has never been barred pursuant to sec. 235.27 (formerly sec. 2222).

The trial court reluctantly denied plaintiff any relief upon the sole ground, as stated in his opinion and as embodied in the findings, that the absence of any writing signed by the defendant wife as to the homestead under said sec. 235.01 was an absolute bar preventing specific performance or the giving of damages.

The equities, under the facts as found by the trial court, are manifestly in plaintiff's favor as against both the defendants.    There was a complete exchange of possession of the respective real estates in apparent acquiescence upon what is here conceded to be an invalid oral agreement, found by the court to have been made between the parties; there was a continued occupancy by the respective parties of the exchanged properties as their new homesteads for months thereafter without protest; there was actual loss sustained by plaintiff in his sale of personal property in reliance upon such agreement; there were improvements made by plaintiff upon the property which he took from defendant; there

was a substantial change to plaintiff's damage by the fire loss. The effect of respondents' contention as upheld by the trial court is to make said sec. 235.01 (found in ch. 235, concerning the alienation of real property), and declaring that no alienation by a married man of his homestead or any interest therein, legal or equitable, present or future, by deed or otherwise, shall be valid or of any effect aforesaid unless with his wife's consent, evidenced by her act of joining in the conveyance, so absolute, exclusive, and controlling as to prevent subjecting the defendants to the dominion of the old and well established rules of equity.

The legislative creation of a homestead exemption, pursuant to the express direction of sec. 17, art. I, Const., has been very liberal in form and liberally construed and enforced at all times, and the amendments thereto have been all for the extending and broadening of such exemption except in the amendment by ch. 269, Laws of 1901, inserting the limitation of value to $5,000 (that limitation not applying, however, as between widow and heirs of her husband, secs. 272.22 and 237.02). The legislative liberality towards the homestead is well illustrated by the fact that until such amendment there had been no limit set in value, although the possibility of abuses under it was pointed out in both the majority and dissenting opinions in *Phelps v. Rooney,* 9 Wis. 70, decided in 1859.

Though it has been held that, so far as the wife is concerned, her interest in a homestead, held by the husband, is no more than the complete and absolute power of veto upon any attempt by him to convey without her written consent (*Ferguson v. Mason,* 60 Wis. 377, 387, 19 N. W. 420; *Weston v. Weston,* 46 Wis. 130, 134, 49 N. W. 834; *Cumps v. Kiyo,* 104 Wis. 656, 661, 80 N. W. 937; *Mash v. Bloom,* 126 Wis. 385, 389, 105 N. W. 831), yet that her consent and signature is imperative, even though she lived apart from him at the time or though the conveyance is given

for necessities furnished the husband (*Herron v. Knapp, Stout & Co. Company,* 72 Wis. 553, 40 N. W. 149), and equity will refuse to correct a description in the mortgage so as to include the homestead of the mortgagors, though it clearly appear that such was the intention and though no other objection is interposed to such reformation than that the wife did not consent in writing (*Gotfredson Bros. Co. v. Dusing,* 145 Wis. 659, 129 N. W. 647).

Although the homestead is for the benefit of the family, yet as between the husband and the wife it is the husband who has the right of selection and the power of abandonment. *Warsco v. Oshkosh S. & T. Co., ante,* p. 87, 208 N. W. 886; *Beranek v. Beranek,* 113 Wis. 272, 278, 89 N. W. 146; *Blatchley v. Dakota L. & C. Co.* 26 N. Dak. 532, 145 N. W. 95; *Stewart v. Pritchard,* 101 Ark. 101, 141 S. W. 505, 37 L. R. A. N. s. 807, with note; 13 Ruling Case Law, 557; 29 Corp. Jur. 951.

In this case there was not only a complete abandonment by defendants of the former homestead; a surrender of the keys and possession; but they occupy the other farm dwelling as their newly selected homestead, title to which is absolutely secured to them by plaintiff's pleading, his deed and tender to defendants. All this is ample to warrant the conclusion that defendants abandoned the old and selected the new homestead, and for neither of these two separate proceedings are written formalities required. *Godfrey v. Thornton,* 46 Wis. 677, 683, 1 N. W. 362; *Pierce v. Gibson,* 108 Tex. 62, 184 S. W. 502, 1 A. L. R. 1675; *Stotts v. Stotts,* 198 Mich. 605, 618, 165 N. W. 761; *Blodgett v. Lawrence,* 90 Vt. 269, 274, 97 Atl. 666.

Voluntarily, therefore, in this case, a family gives up and abandons one homestead and selects and occupies another; having done so they have lost the right to assert a homestead privilege in the former. Once abandoned it is as though it never existed. The homestead statute itself

provides expressly, sec. 272.20 (sec. 2983), that such exemption "shall not be impaired by temporary removal with the intention to reoccupy the same as a homestead," clearly indicating that a permanent abandonment is a destruction. *Blackburn v. Lake Shore T. Co.* 90 Wis. 362, 366, 63 N. W. 289. Being a privilege as it is and not a title to land, it had lost, by defendants' voluntary acts, all existence or efficacy when attempted to be first asserted by defendants' answers. Manifestly defendants cannot have the benefit of two homesteads at one and the same time. *Jarvais v. Moe,* 38 Wis. 440, 446; *Schoffen v. Landauer,* 60 Wis. 334, 338, 19 N. W. 95; 13 Ruling Case Law, 546; 29 Corp. Jur. 790.

Although the constitutional and legislative provisions for such exemption have been steadfastly upheld, however far reaching the results may seem in many instances to be found in the decisions, nevertheless the right in the wife to invoke the protection of the statutes concerning the establishment of or alienation of interests in the homestead is not so absolute and unqualified as to be beyond recognized and well established equitable doctrine.

The protection of the homestead exemption cannot be used as a shield to prevent the recovery of trust funds put into its purchase or improvement (*Warsco v. Oshkosh S. & T. Co., ante,* p. 87, 208 N. W. 886, *supra*) ; neither can it or ought it prevent the application of the equitable doctrine of estoppel where in reliance upon the acts, or omissions to act, by both husband and wife the other party to the transaction has been injured, and when, after substantial performance by the one party, the husband and wife, or either of them, attempt to assert by their pleadings reliance upon such drastic statutory regulations.

That equitable estoppel may affect homestead and dower rights is generally recognized. 10 Ruling Case Law, 749; 13 Ruling Case Law, 662; 29 Corp. Jur. 958, 959. A case

very similar to the one here is *Grice v. Woodworth,* 10 Idaho, 459, 80 Pac. 912, 69 L. R. A. 584, where a purchaser by oral contract from husband and wife entered into possession of their homestead, paid the purchase price, and made improvements thereon with the full knowledge and consent of the wife, and was held entitled to a decree requiring conveyance of the premises to him, and this under statutes similar to ours; and it was also held that such provisions were not intended to operate as a shield to relieve against fraud and are subject to the rules of equitable estoppel and waiver. This case further held that such statutes fall under the same legal principles as those governing conveyances under the statute of frauds; but as to this last proposition we deem it unnecessary to express a present opinion.

This *Grice Case, supra,* though designated in a dissent (p. 472) as being "an effectual rape of the statute," is nevertheless recognized as stating the true rule in *Feltham v. Blunck,* 34 Idaho, 1, 198 Pac. 763, 766, and is also discussed in *Pagel v. Tietje,* 193 Iowa, 467, 186 N. W. 938; but there the facts presented did not warrant its application. It is also followed and many other cases cited to the same point in *Brusha v. Board of Education,* 41 Okla. 595, 139 Pac. 298, L. R. A. 1916 C, 233. This latter case comments upon the substantial changes made for present-day consideration of such questions by the Oklahoma statutes removing the common-law disabilities of the married woman, and suggests that if she be given equal rights with man she should be charged with equal duties. Their legislation in this regard is quite similar to ours, and the results reached here under such disability-removing statutes may be illustrated by the decision in *First Wis. Nat. Bank v. Jahn,* 179 Wis. 117, 190 N. W. 822, as to liability as an accommodation indorser, and *Wait v. Pierce,* 191 Wis. 202, 209 N. W. 475, 210 N. W. 822, as to the right of the wife to recover from the husband for personal injuries.

That a wife may subject herself to the provisions of the doctrine of equitable estoppel even though in the teeth of statutes like ours as to the homestead is also recognized in such cases as *Bovine v. Selden,* 155 Mich. 556, 119 N. W. 1090, 130 Am. St. Rep. 579; *Stotts v. Stotts,* 198 Mich. 605, 165 N. W. 761.

The trial court's conclusion was placed upon his construction of late decisions of this court strictly enforcing the provisions of such statute in favor of the rights of the wife, such as *Rosenthal v. Pleck,* 166 Wis. 598, 166 N. W. 445, in which specific performance or damages were denied for failure by the husband to perform his written contract to exchange his real estate, part of which was his homestead, his wife refusing to join, the court stating that the contract, being void by statute, was beyond the power of equity to reform and that it could not be made the basis of an action for damages; *Helander v. Wogensen,* 179 Wis. 520, 191 N. W. 964, based upon the *Rosenthal Case, supra,* holding a written contract by husband alone, involving the homestead and personal property, ineffectual as the basis for a breach of contract action concerning the personal property; and *Hovie v. Pleshek,* 187 Wis. 55, 203 N. W. 910, holding a lease of homestead property by the husband alone and possession taken, to be void at the time of its execution and delivery and not to be made valid by the subsequent voluntary offer of the wife, unaccepted by the lessee, to then sign, and further holding that a guarantor of such lease is not liable for the rent. We deem none of these decisions, presenting as they do substantially different facts, controlling in defendants' favor.

We find nothing contrary to the application of this doctrine here from what is said in *Cumps v. Kiyo,* 104 Wis. 656, 662, 80 N. W. 937, where, in general language relating to the policy of this statute, it is stated that it is not to "give the wife a mere personal right for her personal benefit which she may waive, or be estopped by her conduct from

insisting upon it, but to protect the home for the benefit of the family and every member of it," etc., and further stating that if it were held a mere privilege which she may waive or which may be lost under the rules of equitable estoppel, a very efficient way would be open to evade and nullify the statute; but later on the same page it is stated that the doctrine of that case does not militate against the capacity of the wife to be affected by an equitable estoppel, as to whether specific property is or is not a homestead, or from denying that the paper signed by her covering the homestead was so intended, and that the limit of the doctrine is that the law of estoppel cannot take the place of the statutory requisite to alienation. The court there cites as illustrating this doctrine, *Nelson v. McDonald,* 80 Wis. 605, 50 N. W. 893, where a wife signed a note and accompanying mortgage, the description in the latter being later filled in by the husband, contrary to her understanding, so as to include the homestead, she receiving no proceeds from the loan; but the court nevertheless held that as to innocent third persons the mortgage was valid and she could not be heard to defend (p. 607).

In *Law v. Butler,* 44 Minn. 482, 47 N. W. 53, it was held that no act of a wife (unless amounting to an estoppel) except affixing her signature could make an assignment of an interest in a homestead valid; and further, that to create an estoppel the facts must operate as to both husband and wife, and that under the facts there presented the wife was not estopped. But in *Bullock v. Miley,* 133 Minn. 261, 158 N. W. 244, where the wife had left the homestead more than a year before the making of the conveyance by the husband and never thereafter returned, subsequently making a deed to the same purchaser and permitting him and his grantee to occupy and improve it and subsequently obtaining a divorce, it was held that she divested herself of all

interest and that there was a complete estoppel as to both husband and wife.

We do not deem as pertinent or to be given weight here such cases as *Collins v. Boyett,* 87 Tenn. 334, 10 S. W. 512, where it was held that a deed by the husband alone and his subsequent removal with his wife, but no other homestead acquired, did not defeat her right; *Cummings v. Busby,* 62 Miss. 195, 197, holding that a subsequent removal cannot validate a prior invalid deed by the husband, and *Welch v. Rice,* 31 Tex. 688, to the same point; *Martin v. Harrington,* 73 Vt. 193, 50 Atl. 1074, that death of the wife does not validate prior deed by the husband alone; and we cannot agree with the general proposition stated in *Ellingwood v. Ellingwood,* 91 Vt. 134, 99 Atl. 781, to the effect that equity cannot give force to a deed declared void by statute.

The broad and effective power of equity in applying its doctrine of estoppel to take title to land from one and vest it in another and to stay the operation of the rules of law is fully discussed in *Knauf & Tesch Co. v. Elkhart Lake S. & G. Co.* 153 Wis. 306, 315, 141 N. W. 701, and its application to the facts there presented makes its application here to a similar end well supported. See, also, *Kimball v. Baker L. & T. Co.* 152 Wis. 441, 451, 140 N. W. 47; *Booher v. Slathar,* 167 Wis. 196, 201, 167 N. W. 261. In its application it is not limited to facts, situations, representations, or concealments as of the time of the original transaction, but often necessarily rests upon subsequent conduct relied upon by the opposite party to his damage. Nor is it presented here in a situation where there was lack of power on the part of the wife to act at all in the original transaction.

What has been said above relates more particularly to equitable estoppel being asserted and maintained against

the homestead right. It is as well, if not more strongly, recognized as applicable against such an inchoate right of dower as here asserted. Though dower is now, under our present statute, advanced to a one-third part of all the lands of an estate of inheritance belonging to the husband, sec. 233.01 (formerly sec. 2159), instead of as formerly a life estate to that extent, it has been held that the doctrine of equitable estoppel applies not only when such right has vested upon the husband's death, but also when the question is raised as to the inchoate right of dower as here presented. *H. W. Wright L. Co. v. McCord,* 145 Wis. 93, 103, 128 N. W. 873; *Godfrey v. Thornton,* 46 Wis. 677, 690, 1 N. W. 362. It is also so held in other jurisdictions. *Rosen v. Tackett,* 222 Mich. 673, 681, 193 N. W. 192, 30 A. L. R. 939; *Townsend v. Woodworth,* 185 Iowa, 99, 169 N. W. 752.

Conceding that up until the exchange of the two farms on December 6th the agreement between the parties could not have been enforced by the plaintiff because, being oral, it was unenforceable, yet after the exchange of possession and the acts by the respective parties in reliance upon and in accordance with the contract for such exchange, there was clearly such possession and part performance as would take the oral contract out of the provisions of the statute of frauds. Sec. 240.08 (formerly sec. 2304); sec. 240.09 (formerly sec. 2305); *Henrikson v. Henrikson,* 143 Wis. 314, 319, 127 N. W. 962; *Papenthien v. Coerper,* 184 Wis. 156, 161, 198 N. W. 391; *Booher v. Slathar,* 167 Wis. 196, 201, 167 N. W. 261.

It is suggested that the understanding that the deeds were not to be executed until after the fire loss of December 21st was adjusted is such conduct as ought to prevent the plaintiff obtaining equitable relief. Under the testimony, however, the situation appears to have been one known to the agent for the insurance company, and it was pursuant to

suggestion from him that the passing of the deeds was delayed. Such situation involves only a question arising from the contract relationship created by the insurance policy under which the mortgagee was the most substantially interested. It was a question for the insurance company to present if it desired it as a defense to the policy. We do not see that it has any material bearing upon the question here presented.

Under the facts as found, therefore, and the conclusions we have reached as to the law, the plaintiff, having tendered his conveyance, is entitled to have the conveyance to him of the property formerly owned by the defendants as prayed and the payment of the agreed sum of $2,250, or in lieu of such conveyance a judgment to be entered to the same effect.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment as directed.

OWEN, J. (*dissenting*). If this decision does not smother the statute requiring the wife to join in a conveyance of the homestead, then that statute has unusual vitality. There is a striking contrast between the tone of the decision in this case and that of *Rosenthal v. Pleck,* 166 Wis. 598, 166 N. W. 445. It is difficult to appreciate that the two decisions were voiced by the same court. In *Rosenthal v. Pleck* the decision is strong, virile, and leaves no doubt of the then attitude of this court with reference to the statute under consideration. The present decision points the way to a practical nullification of this statute. Under the present decision the husband may barter away a comfortable homestead, install his family in a shack on a back alley, and upon the establishment of such second homestead—his wife accompanying him in obedience to her plain marital duty,—the alienation of the comfortable homestead becomes valid and the husband may dissipate the proceeds thereof in satisfaction of his most profligate desires. Who

can deny that the public policy embodied in the statute is thereby defeated?

The purpose of such statutes is to protect the home from the improvidence of the husband, thereby promoting the welfare of the entire family as well as the general social welfare. The public policy embodied in these statutes is founded on deep-seated and widespread sentiment, as evidenced by the fact that such statutes are to be found in practically every state of the Union. From time to time courts, in an attempt to meet hard situations, have whittled away the statutes by the application of equitable principles, only to be met by stronger and more definite legislative declarations in an attempt to make the legislative purpose still more plain. Such an instance is frankly acknowledged in *Rosenthal v. Pleck, supra.* Henceforth a husband in this state will have little difficulty in doing what he pleases with the homestead. Nothing short of a family disruption can prevent his effectual alienation thereof if this decision is to stand.

I agree that here and there are to be found judicial decisions which seem to support 'the conclusion reached in the majority opinion. But such scattering decisions as may be found to support the conclusion of the court are completely overshadowed by the great weight of authority, and wither when exposed to the searchlight of reason. A consideration of the notes to be found in 95 Am. St. Rep. 921 and 12 Am. St. Rep. 683 demonstrates the proof of the assertion that the conclusion of the court is contrary to the great weight of authority.

The first ground upon which the conclusion of the court rests is that the removal from the homestead by the defendants constituted an abandonment thereof which rendered the contract entered into between the defendant husband and the plaintiff prior to such removal a valid contract. This conclusion is palpably illogical. The contract sought

to be enforced by this action was concededly a void contract. It was a contract made between the plaintiff and the defendant husband without the advice, consent, or concurrence of the wife indicated in the manner required by statute. The contract was void because at the time it was entered into the subject thereof was a homestead. Granting that the homestead was subsequently abandoned, it does not appear that after such abandonment any other or further contract was entered into. The contract which the court is here called upon to enforce was a contract for the conveyance of a present, existing *bona fide* homestead. It was not executed in the manner required by the statute, and was void. I submit that in the negotiations between the plaintiff and the defendant husband there was not a single germ which could grow or ripen into a valid contract. In *Cummings v. Busby,* 62 Miss. 195, 197, speaking of a like contract, the court said:

"The deed of trust executed by Busby without the joinder of his wife, as required by the statute, was not valid, and its invalidity was not cured by the subsequent removal from the homestead, whether such removal was temporary or permanent. The validity or invalidity of the deed of trust was determinable by the conditions existing when it was executed, and not by what occurred afterward."

It has been held that the husband's sole deed of the homestead is not validated by the subsequent death of the wife leaving him without children. *Martin v. Harrington,* 73 Vt. 193, 50 Atl. 1074. Nor by a subsequent divorce. *Alt v. Banholzer,* 39 Minn. 511, 29 N. W. 674. This court so held in most unmistakable language in *Herron v. Knapp, Stout & Co. Company,* 72 Wis. 553, at p. 556 (40 N. W. 149), where it was said:

"It would be a violation of all rules of construction to hold that a mortgage by the husband of the homestead, without the signature of the wife to the same, was valid

after the homestead right had expired.   This would be pure legislation, importing into the statute important words which the legislature did not see fit to use."

For further authorities upon this subject see note in 95 Am. St. Rep. at p. 920.

I confess I am unable to allow the logic which leads to the conclusion that a void contract for the alienation of a homestead becomes valid if and when the homestead has been abandoned.   Whether the contract is valid depends upon conditions existing when it is made.   It cannot automatically become a valid contract by the subsequent removal of impediments to its validity existing at the time of its execution.

It is next said that the defendants are estopped to challenge the validity of the contract.   This also finds support in scattering judicial decisions, but is clearly against the great weight of authority, is utterly unsupported by reason, and has been expressly repudiated by this court.   It is a general rule that a transaction which is void by law cannot be purged of its infirmity by means of an estoppel.   10 Ruling Case Law, 801, and cases cited.   See, also, long list of cases cited in support of the same proposition in 2 Supp. to Ruling Case Law at p. 1078.   This court has expressly held that a Sunday contract cannot be given life upon the principles of estoppel.   *Gist v. Johnson-Carey Co.* 158 Wis. 188, 147 N. W. 1079.   It is fundamental that equity follows the law, and equitable principles should not be invoked to nullify the law.   The application of the doctrine of estoppel to make valid a contract which the legislature has declared void is a clear misuse of equitable power.   It exalts the court above the legislature in the law-making field.   It makes the court the supreme arbiter of public policy, which is contrary to the fundamental principles of our government.   The decisions applying the doctrine of estoppel for the purpose of rendering valid contracts declared

void by legislative enactment are found where courts have yielded to temptation in hard cases.  But it seems plain to my mind, on fundamental principles, that such decisions approach a plain usurpation of power.

It is well understood that all statutes at times work seeming injustice.  It may be conceded that the decision in this case works justice as between the immediate parties, but it does so at tremendous sacrifice.  It is not the province of courts to bend and warp statutes to fit particular situations, nor to apply equitable principles which practically nullify legislative enactments.  The decision in this case is bound to give rise to much confusion concerning this subject.  It is far better for the jurisprudence of the state that the plain statutory rule be enforced with the same rigor and definiteness that it was enforced in *Rosenthal v. Pleck, supra.*

While the great weight of authority holds that the doctrine of estoppel cannot be applied in cases such as this, nowhere is that more forcibly declared than by our own court in *Cumps v. Kiyo,* 104 Wis. 656, at p. 662 (80 N. W. 937), where it is said:

"If it should be held that the homestead right is a mere privilege which the wife may waive, or which may be lost under the rules of equitable estoppel, a very efficient way would be open to evade and nullify the statute.  Such right is placed high above the reach of any such dangers by the absolute disability to alienate the homestead in any manner, except by a joint conveyance of some kind, signed by the husband and wife.  The disability of the husband to otherwise convey the homestead is as complete as if it were not alienable at all, and of the wife to otherwise consent to such alienation, as if she were a minor."

But what is there in this case upon which an estoppel *in pais* can be predicated—at least on the part of the wife? It is conceded in the opinion of the court that it is the right of the husband to fix the homestead, and that it is the duty of the wife to follow him.  Where is the conduct on the

part of the defendant wife which misled the plaintiff or in-
duced him to take a position which otherwise he would not
have taken?   He was chargeable with knowledge of the law
requiring a contract involving the alienation of the home-
stead to be in writing and signed by both husband and wife.
He plainly ignored this requirement of the law.   He nego-
tiated only with the husband.   He demanded no writing of
any kind.   The wife did nothing to lead him into the posi-
tion from which he seeks relief.   The defendant *Ida Groth*
testified that she had no part in the negotiations; that she
knew nothing about the trading transaction; that she told
her husband that she did not want to trade, and did not
want to leave her home, but that her husband forced her
to go, saying that he would take the children.   It is un-
disputed that in the process of exchange the plaintiff moved
upon the premises about four o'clock in the afternoon and
that the defendants did not leave their premises until three
or four hours later.   It is said that the wife handed the
plaintiff the keys of the house when they left the premises.
If this be true, the record leaves no doubt that she did it
pursuant to the direction, if not under the compulsion, of
her husband.   At any rate, it was a most trivial and acci-
dental circumstance, and certainly was no contributing or
inducing factor to produce the situation.   The plaintiff had
already moved upon the premises, and by act if not by word
demanded possession.   Whatever the conduct of the wife
after this time, whether voluntary or reluctant, it did not
induce the plaintiff to take any position to his prejudice,
and cannot be the basis of an estoppel.   Of a similar situa-
tion the Minnesota court said: "The case looks like that
of two men contracting for a transfer by one of them of his
interest in the land constituting his homestead, ignoring the
wife, without whose signature the transfer cannot be made."
*Law v. Butler,* 44 Minn. 482, at p. 486 (47 N. W. 53).   I
am clearly of opinion that the doctrine of estoppel furnishes
no basis for the conclusion of the court.

The matter of partial performance is also referred to in the opinion, and cases arising under the statute of frauds are cited.  It must be remembered that the statute of frauds specifically provides that part performance validates a contract otherwise void.  No such provision is to be found in the statute here under consideration, and that principle of law has no application whatever to the facts of this case.

Nor can I concur in the view that the defendant *Ida Groth* has estopped herself from asserting her inchoate right of dower in the premises, a conveyance of which is sought. The statute (sec. 233.01) defines the right of dower.  This right may be barred, first, by jointure (sec. 233.09) ; and second, by the wife joining with her husband in a conveyance duly executed and acknowledged by her in the manner prescribed by law (sec. 235.27).  I find no case in which it is held that the right of dower may be barred by estoppel where the wife is not estopped by her conduct to deny the relation of husband and wife.  This was the basis of the holding in *H. W. Wright L. Co. v. McCord,* 145 Wis. 93, 128 N. W. 873.  In that case the wife during many years and until the death of the husband allowed to go unchallenged the husband's claim that he had procured a divorce, and in silence permitted him to hold out as his lawful wife another woman whom he had publicly married; she knew that there was no valid divorce, and knew or had good reason to believe that he was engaged in large business transactions and dealing daily with people who in good faith accepted his second marriage as valid; that conveyances were being signed by the reputed wife and being accepted by the grantees, and she voluntarily and intentionally withheld any objection thereto and did nothing to in any way put innocent purchasers upon inquiry.  The case of *Godfrey v. Thornton,* 46 Wis. 677, 1 N. W. 362, has no remote application to the facts in this case.  *Rosen v. Tackett,* 222 Mich. 673, 193 N. W. 192, 30 A. L. R. 939, involves the effect of a deed given by a widow who was at

the time an heir and executrix. Notes upon this subject will be found in 26 L. R. A. N. s. 574, 575, and 34 L. R. A. N. s. 762. It is submitted that none of the cases go further than to hold that where the wife has so conducted herself as to lead third persons to believe that the relation of husband and wife no longer existed, and to her knowledge innocent third persons have acted upon such belief, she is thereafter, as against them, estopped to assert the relationship. But where the relationship is conceded and known, and there are no facts or circumstances misleading innocent third parties concerning the existence of that relationship, dower can be barred only in the manner prescribed by statute. The record in this case is utterly barren of any facts which can operate as a bar to the defendant *Ida Groth* from asserting her dower rights in the premises for which a conveyance is sought.

I am authorized to state that Mr. Justice ROSENBERRY and Mr. Justice DOERFLER concur in these views.