ESTATE OF CULLEN: GRANT and wife, Claimants, Respondents, vs. FIRST NATIONAL BANK OF SUPERIOR and another, Executors, Appellants.

*March 10—April 7, 1937.*

For the appellants there was a brief by *Powell & Sprowls* of Superior, and oral argument by *John S. Sprowls*.

For the respondents there was a brief by *Cadigan & Cadigan* of Superior, and oral argument by *Charles P. Cadigan*.

WICKHEM, J. This appeal involves two principal questions: (1) Does the evidence sustain the finding of the trial court that the claimants and decedent did in fact enter into an oral agreement as set forth in the claim filed by the claimants? (2) Was there such performance of this contract as to take the contract out of the operation of the statute of frauds? This requires a consideration of the facts.

John J. Cullen, the decedent, lived in Superior for many years prior to his death, and was a man of considerable means. He was unmarried and resided at a hotel in Superior. For more than twenty-five years prior to his death he had been acquainted with Sadie B. McNally, a sister of the claimant Beatrix Grant, who lived with the Grants. The evidence is that Miss McNally and Cullen had become engaged in

1911, and this engagement continued up to the time of Cullen's death. Cullen was not related either to James or Beatrix Grant. Prior to 1918, the Grants resided at Port Arthur, Ontario, where Grant had been engaged in the hotel business. Some time before the Grants came to Superior, Grant had abandoned the hotel business and was living on a homestead near Port Arthur. In April, 1918, he came to Wisconsin and moved upon a farm of eighty acres owned by Cullen. This farm was later increased by purchases to two hundred eighty acres and constitutes the premises in question here. When the claimants came to Superior they had capital of $1,400. With them came Miss McNally, who was then engaged to Cullen. There is no evidence as to any kind of a lease between the claimants and deceased. During all this early period of the Grant occupancy, deceased came out to the farm nearly every Sunday and holiday and treated it as his home. On November 14, 1923, a fire completely destroyed the barn, machine shed, strawstacks, blacksmith shop, icehouse, implement shed, and chicken shed, most of which had been erected by Cullen after the Grants came to the farm in 1918. Machinery and implements also were destroyed, and, except for livestock, the Grants had nothing left on the farm but the house. There was no insurance. The evidence warrants the conclusion that the Grants were very discouraged, and that they announced their intention of leaving the farm and returning to Canada. Decedent said, "You can't do that to me. This has been a home for me, and I don't want you to go back to Canada, and if you stay on here, and continue to make the improvements, and work the farm, and if anything happens to me, this farm is yours." Other expressions to the same effect, of which this is a fair sample, were made, and the Grants stayed on the farm and made improvements aggregating in the neighborhood of $6,000,

which they paid for out of the operation of the farm. On a later occasion, decedent, answering an inquiry as to who owned the farm, stated, "Mr. Grant." On another occasion, when Mrs. Grant was ill and Cullen found out that she had been working too hard and worrying, Cullen stated, "You have nothing to worry about. If anything happens to me, this farm is yours." In view of this testimony, the trial court's conclusion that Cullen either entered into an oral contract to convey in consideration of the Grants' remaining upon the farm, working it, and improving it, and furnishing a sort of home for him, or that he made a conditional oral gift of the farm, cannot be said to be contrary to the great weight and clear preponderance of the evidence.

The next question is whether there was such performance of the contract or condition as to take the case out of the statute of frauds. The evidence sustains the conclusions of the trial court, (1) that from and after the time of the contract the claimants were in possession; and (2) that they made extensive permanent improvements and permitted Cullen to come to the farm and to use it as his home. The only question is whether, since the Grants were at the time of this contract in possession as some sort of tenants, their continued possession can be considered to be referable solely to the oral contract. In *Marshall & Ilsley Bank v. Schuerbrock,* 195 Wis. 203, 217 N. W. 416, it is held that the performance which is claimed as a part performance must be solely referable to the oral contract. We conclude that when the Grants unequivocally announced after the fire that they were leaving the place, that that constituted a determination to abandon or surrender their original possession, and that any continuance of their possession after that point would be referable solely to the oral contract. Furthermore, the making of extensive improvements of a permanent character warrants the conclu-

sion that the continuance of possession was solely referable to the oral contract. In *Hogan v. Thrasher,* 72 Mont. 318, 233 Pac. 607, 611, the court said:

". . . It is the general rule that in order for possession by the vendee to constitute part performance of a parol agreement to sell or exchange real property, such possession must be in pursuance of the agreement and not merely a continuance of a former possession. *Lamme v. Dodson,* 4 Mont. 560, 2 P. 298; note, 9 Am. Cas. 135. Whether it is the one or the other depends upon the facts of the particular case; but the authorities generally agree that by making valuable, substantial, or permanent improvements upon the land, the vendee gives character to his possession and makes it referable to the new relation created by the contract. *Phillips v. Jones,* 79 Ark. 100, 95 S. W. 164, 9 Am. Cas. 131; Pomeroy on Contracts, Specific Performance, § 124; 36 Cyc. 664; 25 R. C. L. 264. In principle the same rule was applied in *Reece v. Roush,* 2 Mont. 586."

In *Henrikson v. Henrikson,* 143 Wis. 314, 127 N. W. 962, it was said that the making of valuable permanent improvements upon the land by the vendee in accordance with his agreement and with knowledge of the vendor is the strongest and most unequivocal act of part performance by which a contract to sell is taken out of the statute. This statement was made in a case in which there was no possession by the vendee, and the court was applying the rule that equity will not enforce specific performance of an oral agreement to convey land although there has been part performance by the purchaser unless the purchaser has been put in possession except where vendor's refusal to perform will work a fraud upon the purchaser and the purchaser has no adequate remedy at law. See *Papenthien v. Coerper,* 184 Wis. 156, 198 N. W. 391; *Krueger v. Groth,* 190 Wis. 387, 209 N. W. 772. If under these special circumstances the making of improvements without actual possession will entitle the vendee to specific performance, it seems evident that such acts should

be held effective to characterize and give color to a continued possession and make it solely referable to the oral contract. It would be difficult to suppose that a possession accompanied by such improvements could have been referable to a mere tenancy at will.

The executors contend that claimant, having filed two claims, one for services and one for specific performance based on the oral contract, should have been required to elect as between these claims. A motion to elect was made, which the court took under advisement and ruled upon at the conclusion of the testimony. Assuming that the court should have compelled an election, as to which we express no opinion, we discover no evidence that the executors were prejudiced by this procedure. It may be that the trial court received indiscriminately testimony applicable to both claims, but the presumption is that it properly evaluated the testimony and applied it to the issues to which it was relevant. There being evidence to support the findings, and the latter not being against the great weight and clear preponderance of the evidence, the admission of evidence irrelevant to the issues of specific performance would not constitute prejudicial error. See *Estate of Southard,* 208 Wis. 150, 242 N. W. 584.

*By the Court.*—Judgment affirmed.