SIEGEL, Appellant, vs. CLEMONS, Respondent.

*March 2—April 6, 1954.*

For the appellant there was a brief by *Vaudreuil & Vaudreuil* of Kenosha, and oral argument by *Leo E. Vaudreuil.*

For the respondent there was a brief and oral argument by *Harold M. Bode* of Kenosha.

CURRIE, J. 1 American Law of Property, p. 889, sec. 5.113, points out that the issue of "abandonment of a homestead involves a factual inquiry nearly identical to that required in ascertaining domicil." This same authority states that abandonment of a homestead "consists of voluntary removal from the homestead property without intent to return and occupy it as a home." Id. p. 886.

Included among the findings of fact made by the learned trial court in this case there appears the following specific finding:

"That after what transpired on August 15, A. D., 1950, Louis Siegel concluded that he was through with the plaintiff and through with the home; that *he abandoned* all thoughts or ideas of the wife ever again providing care for him or any and *all ideas of ever again residing on the premises or occupying the same as his homestead. . . .*" (Emphasis supplied.)

The facts brought out in the testimony in the trial below, as hereinbefore set forth, amply support the foregoing finding, and therefore it must be accepted as a verity on this appeal.

However, counsel for the plaintiff widow contend that a husband cannot abandon a homestead in which his wife is residing, so as to enable him unilaterally to convey such homestead, or his interest therein, without first providing her with another home. In support thereof, counsel advance the argument that to hold otherwise would make a mockery of the provisions of sec. 235.01 (2), Stats., and defeat the legislative purpose underlying the enactment of the same, if all that a husband had to do, in order to be able to convey his interest in a homestead without his wife's signature, would be to walk out of the home and state it as his intention that he never intended to return.

We are in agreement with counsel as to the legislative purpose sought to be accomplished by the statute. This purpose was ably stated by Mr. Justice (later Chief Justice) VINJE in *Rosenthal v. Pleck* (1918), 166 Wis. 598, 600, 166 N. W. 445, as follows:

"The legislative thought was that it is contrary to public policy to permit the husband alone to alienate the homestead in any manner, or to incur any liability through an attempt to do so, because to stop short of that would be to emasculate the essential feature of the law, which is the conservation of the homestead for the family."

In *Beranek v. Beranek* (1902), 113 Wis. 272, 89 N. W. 146, plaintiff and her deceased husband had a homestead interest in a leasehold of which the husband was the lessee.

The husband provided a home elsewhere into which he desired to move but the plaintiff wife refused to move out of the original leasehold homestead. The husband then released in writing his interest in the leasehold, the plaintiff not joining therein. Plaintiff widow instituted an action of ejectment and for damages against the lessor in which the validity of the release so executed by her deceased husband was in issue. The court in its opinion in that case stated (p. 278):

"Applying the law to the facts presented in this case, we cannot escape the conclusion that the evidence shows a relinquishment and abandonment of the homestead in question by Frank Beranek in his lifetime, binding upon his wife, and fatal to the recovery herein. *It is not to be understood that such homestead right can be defeated by the husband abandoning his family and leaving them to shift for themselves.* Such was not this case. The husband, in apparently good faith, decided to change his home, rented another house, and sought to move his family thereto. He had an absolute right to do so, and thus relieve himself from the disability of the statute. The refusal of the wife to follow him did not preserve the status of the homestead." (Emphasis supplied.)

1 American Law of Property, p. 890, sec. 5.113, summarizes the law on this issue of attempted unilateral abandonment of a homestead by one spouse as follows:

"The power to abandon the homestead is normally in the homestead owner, but that statement requires qualification if the owner is married. If a husband has the uncontrolled discretion to abandon the homestead and thereby to destroy the homestead character of the property, the protection afforded his wife under typical provisions requiring her joinder for alienation of the property becomes illusory. On the other hand, the exclusive right of the husband to select the family residence is still recognized in most states. It is not surprising, therefore, to find that the courts are divided on the question of whether the husband's intention to abandon the homestead is controlling. Most of the older cases held that the wife's intent was immaterial, at least when she removed

from the homestead along with her husband. *More recently, many courts have recognized that the wife's interest in the homestead property should not depend upon the whim of her husband, and that abandonment, if solely within the husband's discretion, provides too easy a means of circumventing the statutory provision requiring the wife's joinder for a valid conveyance of the homestead."* (Emphasis supplied.)

On this point, see also *Novotny v. Horecka* (1925), 200 Iowa, 1217, 206 N. W. 110, 42 A. L. R. 1158.

Counsel for the defendant daughter contend that the opinion of this court in *Radtke v. Radtke* (1945), 247 Wis. 330, 19 N. W. (2d) 169, holds that a husband can unilaterally abandon the homestead and then convey it without the wife's signature and against her consent. We must concede that the language used by this court in that opinion is subject to such interpretation. However, the facts of that case did not involve a conveyance by the husband of an interest in the homestead in which the wife was residing and in which she desired to so reside. The plaintiff wife in that case and one Charles F. W. Radtke were married on September 23, 1933, and four days later the husband placed his former homestead in the joint names of himself and wife as joint tenants. The parties lived together until August 17, 1934, when the plaintiff left him because of alleged mistreatment on his part. The husband continued to reside in the premises until September 17, 1941, when he left to go to a hospital for treatment for cancer never intending to return to said home. On October 21, 1941, he conveyed his interest in the premises to his three children from a prior marriage by deed in which the plaintiff did not join. Both the trial court and this court held that the conveyance was valid and vested an undivided one-half interest in the grantees.

Therefore, in *Radtke v. Radtke,* we have a situation where the plaintiff wife had left the home seven years prior to the

abandonment of the same as a homestead by the husband. The husband could not destroy the wife's homestead rights in the home by his wrongful conduct which had compelled her to remove therefrom, and the wife, therefore, should be accorded a reasonable time in which to enforce any rights she may have to claim such premises as her home. However, after the lapse of seven years without the wife taking any action to enforce such rights against the premises, during which time the parties have lived apart, there would seem to be no reason of public policy which requires that the husband select and provide another home for the absent wife, before he will be permitted to abandon such homestead and unilaterally convey his interest therein. Therefore, we approve the result reached in *Radtke v. Radtke* and deem that we would be bound to follow it if confronted with another case having a similar fact situation; but we do not consider it to be *stare decisis* on the issue of unilateral abandonment of the homestead by the husband in those situations where there exists a duty upon the husband to provide his wife or family with another homestead as a condition precedent to such abandonment.

In support of the principle of law enunciated in *Radtke v. Radtke, supra,* the following three decisions of this court were cited: *Beranek v. Beranek, supra; Krueger v. Groth* (1926), 190 Wis. 387, 209 N. W. 772; and *Hainz v. Kurth* (1938), 227 Wis. 260, 278 N. W. 413.

*Beranek v. Beranek, supra,* has already been discussed, and, as previously noted, contained an express statement questioning the unilateral right of abandonment on the part of the husband.

*Krueger v. Groth, supra,* involved an exchange of one homestead farm for another. Inasmuch as the husband, as the head of a family, has the legal right to select the place of the home which will constitute the homestead (except

possibly in an extreme case such as present in *Powless v. Powless* (1953), 264 Wis. 71, 58 N. W. (2d) 520), it was held that the formerly occupied farm home ceased to constitute homestead property upon the husband having selected the other property as the home for his family.

In *Hainz v. Kurth, supra,* the question was whether one particular acre of land in a 160-acre farm constituted part of the 40-acre homestead. This court held that the husband, without the consent of the wife, had the right to make the selection of the 40 acres that constituted the homestead, and further that the wife was by her conduct estopped from claiming such acre as part of the homestead.

Thus, neither in *Radtke v. Radtke, supra,* nor in any of the three afore-mentioned cases cited therein, did we have a situation where a husband unilaterally attempted to abandon and then convey a home in which he and his wife had been presently residing as a homestead without first making provision for another home for the family.

We now turn to the facts in the instant case to determine whether they establish a situation of unilateral abandonment by the husband against the wishes of the wife. While it may have been beyond the plaintiff's strength to take care of her husband in his impaired physical condition, this did not in itself justify plaintiff in refusing to permit him to return to his own home. A wife who orders the husband out of the homestead is not in a position to object if the ejected spouse accepts such separation from the home as permanent, and, acting thereon, conveys his interest therein to someone else. We therefore do not have present a situation where a husband abandons his wife and home, and, by reason of such conduct on his part, attempts to unilaterally convey away his interest in the homestead in contravention of the policy underlying the enactment of sec. 235.01 (2), Stats. At the

time of the conveyance to the defendant, the property did not constitute *"his homestead"* and therefore he could rightly convey his joint interest therein without the necessity of his wife evidencing her consent thereto by joining in said deed or executing a separate deed.

*By the Court.*—Judgment affirmed.